669 P.2d 990

**Eleanor NELSON, a widow, Plaintiff/Appellant,**

v.

**Elmo P. NELSON and Martha J. Nelson, husband and wife, Defendants/Appellees.**

**No. 2 CA–CIV 4600.**

Court of Appeals of Arizona, Division 2.

May 12, 1983.

**214**

Jack J. Rappeport, Tucson, for plaintiff/appellant.

Johnston & Grynkewich by Gary S. Grynkewich, Tucson, for defendants/appellees.

## OPINION

BIRDSALL, Judge.

The trial court sitting without a jury dismissed this action at the close of the plaintiff-appellant's case. The trial court gave as its reason, the statute of limitations. The motion to dismiss could just as well have been granted for another reason urged, that the evidence was insufficient to support any of the appellant's various theories. Despite the obvious lack of proof the appellant's counsel has filed both opening and reply briefs which contain facts represented to be shown by the evidence. These "facts" are figments of counsel's imagination; they are what he wishes the evidence had established. As the appellees argue, they are a recitation of his pleadings and not the evidence. There is no evidentiary basis for this appeal. The appeal is without merit and frivolous.

The complaint was "to impress constructive trust on property conveyed by plaintiff to defendant and to compel reconveyance of legal title". It alleges that the appellant and the appellees stood in a confidential relationship at the time she signed a deed quit-claiming certain real property to the appellees; that she "desired that the appellee Elmo receive the property at her death if he would help her pay the mortgage" and "help her raise and support the seven minor children living with her on said property at the time of her husband's death"; that Elmo, except for one year, did not help her raise and support the children; that appellee Martha tricked her into signing the deed; that at that time she believed she was going to die "because of a bad heart and that she wanted the appellees to care for her if she became disabled".

The complaint also alleges that the appellant told Martha of her desires and that she thought she was signing a "testamentary document" when she executed the deed. Additional allegations are that no consideration was paid for the deed and the deed was never delivered and that later "to cover up their dishonesty and to take advantage of plaintiff's widow's tax exemption" the appellees conveyed a life estate in the property to the appellant. The answer admits only the preliminary matters and the execution and recording of the two deeds.

On appeal we must view the evidence in favor of the party against whom a verdict has been directed. *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976). The complaint should not have been dismissed if it was reasonably possible that legally sufficient evidence was produced on any theory. *Nieman v. Jacobs,* 87 Ariz. 44, 347 P.2d 702 (1959). Our review of the record, including the transcript references furnished by the appellant, discloses no evidence to support the alleged confidential relationship; the agreement that the property would be left to Elmo in return for his promise of assistance, etc.; the trickery or the coverup.

The evidence does show that in 1955 the appellant, a widow, then age 58 and apparently of sound mind, quit-claimed the property to her son Elmo and his wife Martha. At that time the appellant was worried about her heart although a medical doctor had allayed those fears. The deed, acknowledged by the appellant, was recorded in November. It had been signed in July. On December 15, 1956, the appellees executed and recorded a deed giving the appellant a life estate in the property. The appellant has received the income from it, including interest on the proceeds of a size-

able condemnation award being held in trust pending these proceedings.

There was evidence that the appellant made statements that inferred she did not know she had signed a deed and thought she had signed a paper expressing a testamentary intent to transfer the property. In subsequent years she repeatedly asked Martha to return "the deed", but this was apparently the deed to the appellant and her husband, not the quit-claim.

In 1972, prior to renting the property to a third party, a search of the property records revealed the appellees' ownership subject only to the life estate in the appellant. At about the same time, Elmo, when asked by the other children, asserted his ownership interest in the property. The instant action was commenced on October 20, 1980.[1] We have carefully examined not only each reference in the appellant's briefs but the entire record. The record does not support the appellant's version of the evidence. For example appellant's counsel refers us to the deposition of "Justince (sic, Justine) Getty" for proof of the fact that "appellant without reading the document placed in front of her by Martha, signed the document, which was then notarized." No part of that deposition was ever admitted in evidence. It was not before the trial court and we cannot consider it.[2]

The appellant makes three arguments on appeal:

1) that the appellant was of unsound mind at the time the action accrued and therefore the statute of limitations was tolled under A.R.S. § 12–502;

2) that the statute of limitations did not commence to run against the appellant's suit to enforce a resulting or constructive trust until she had knowledge of the underlying lack of consideration, fraud or mistake, and at that time she was of unsound mind; and

3) the appellees are estopped to plead the statute of limitations by reason of a fiduciary or confidential relationship between them and the appellant or because of mistake, misrepresentation or fraud.

A.R.S. § 12–502 states, in pertinent part, that:

"... [i]f a person entitled to bring an action ... is at the time the cause of action accrues ... of unsound mind ... the period of such disability shall not be deemed a portion of the period limited for commencement of the action."

In Arizona a person of unsound mind is generally considered to be "unable to manage his affairs or to understand his legal rights or liabilities." *Allen v. Powell's International, Inc.*, 21 Ariz.App. 269, 518 P.2d 588 (1974). A.R.S. § 12–502 states that the condition of an unsound mind must be in existence at the time the cause of action accrues. Arizona is thus in line with the general rule that personal disabilities commencing after the time the cause of action accrues do not toll the statute of limitations. *See* 51 Am.Jur.2d, Limitation of Actions § 188. Thus, the trial court had to decide whether the appellant was of unsound mind and whether that condition existed at the time the cause of action accrued. The evidence shows the appellant's cause of action accrued at the latest in 1972. No evidence contradicts a finding that at that time she had actual knowledge of the appellees' remainder interest in the property and their intention to retain it. The statute of limitations was three years for the fraud claim, A.R.S. § 12–543, or at the most four years for breach of contract, A.R.S. § 12–550, *Barrasso v. First National Bank,* 122 Ariz. 469, 595 P.2d 1014 (App. 1979).

No evidence, much less any clear and convincing evidence, even suggests that the appellant was of unsound mind prior to the events in 1972. There was no medical evidence or other expert testimony concerning

---

1. A nearly identical complaint on behalf of the other children was filed by the appellant's counsel in November 1981.

2. In the reply brief appellant's counsel also referred to deposition testimony not in evidence. We granted the appellees' motion to strike that part of the brief.

her mental condition. Although she did have the illness in 1955 there is no suggestion that this affected her mind. Nowhere in the appellant's statement of facts does counsel point us to any evidence showing the appellant to be of unsound mind.

In his reply brief counsel cites testimony from the appellant's sister that "you never did know" (the condition of her sister's state of mind), "she said things that she shouldn't say" and "she didn't know what she said." Later the sister testified "she's a very kind person, but she was . . . she's a sick person too, and she was always upset. . . ." And later, ". . . she don't like to talk to people. She don't know what she says sometimes." The most that can be said of this evidence is it shows she was sometimes confused and forgetful, just as she appeared to be as a witness. This is not evidence of incompetency. As early as 1921 our supreme court said:

> "It is well settled that mere mental weakness in the grantor does not invalidate a deed. To have that effect the mental power must be so far deteriorated or destroyed that the grantor is incapable of understanding in a reasonable degree and knowing the consequences of the instrument he executes." *Pass v. Stephens,* 22 Ariz. 461, 198 P. 712 (1921).

*And see* more recently *Hendricks v. Simper,* 24 Ariz.App. 415, 539 P.2d 529 (1975). The trial court could well have found that there was no evidence showing any incompetency, much less any prior to the events in 1972.

Assuming arguendo that all of the appellant's theories are validly before us, the statute of limitations bars her action. Under the constructive trust theory if the reason for declaring a constructive trust is that the appellees acquired title to the property wrongfully, then a cause of action for its recovery accrues immediately, assuming the appellant had actual or imputed notice of the wrongful acquisition. *See* G.T. Bogert, The Law of Trusts and Trustees, § 953 (Revised 2d.Ed.1982). Arguably, the appellant had constructive notice in 1955 when the quit-claim deed was recorded. At the latest she received actual notice of the wrongful acquisition in 1972 when a search of the county records disclosed the appellees' ownership interest to all concerned. Even assuming that the statute of limitations did not begin to run under the constructive trust theory until 1972, the appellant's action would have been barred long before the institution of this action in 1980. The appellant's contract action is barred by the statute for the same reason.

■ Finally, the appellant argues that the appellees should be estopped from pleading the statute of limitations as a bar since the transfer of title to the property occurred by reason of a fiduciary or confidential relationship between the appellees and the appellant or because of mistake, misrepresentation or fraud. The doctrine of estoppel may be used to bar a party's right to assert the statute of limitations. *See Cheatham v. Sahuaro Collection Service, Inc.,* 118 Ariz. 452, 577 P.2d 738 (App. 1978); *Irwin v. Pacific Am. Life Ins. Co.,* 10 Ariz.App. 196, 457 P.2d 736 (1969). In the present case, assuming the appellant justifiably delayed the initiation of an action to assert her rights in reliance on the fiduciary relationship between the parties or because of mistake, misrepresentation or fraud, she nevertheless had a reasonable time to sue after the promises or representations ceased to justify delay. *See Brewer v. Food Giant Supermarkets, Inc.,* 121 Ariz. 216, 589 P.2d 459 (App.1978); 51 Am.Jur.2d, Limitation of Actions § 437. The grounds argued in justification for the appellant's delay in asserting her rights terminated at the latest in 1972 when the true state of affairs was revealed to her. No excuse is offered for the eight-year hiatus before bringing this action.

The appellant knew or should have known of the true state of affairs in 1972 at the latest. At that time the statute of limitations began to run. It was not tolled by any personal disability. The appellant simply waited too long to commence her action.

■ We affirm the judgment of the trial court. We find this appeal frivolous, Rule 25, A.R.C.A.P., 17A A.R.S. We find appel-

lant's counsel guilty of an unreasonable infraction of Rule 13(a)(4), A.R.C.A.P., 17A A.R.S.[3] The statement of facts contained in the brief is totally unsupported by the record. We assess a penalty in the amount of $500 against appellant's counsel (not the appellant) and in favor of appellees. Rule 25, ibid.

HOWARD, C.J., and HATHAWAY, J., concur.

**3.** "*Brief of the Appellant.* The brief of the appellant shall concisely and clearly set forth under appropriate headings and in the order here indicated:

... 4. A statement of facts relevant to the issues presented for review, *with appropriate references to the record.* The statement shall not contain evidentiary matter unless material to a proper consideration of the issues presented, in which instance *a reference shall be made to the record or page of the transcript where such evidence appears.*" (Emphasis supplied)