690 P.2d 797

**MOTHER TUCKER'S FOOD EXPERIENCE and Insurance Company of North America, Petitioners,**

**v.**

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Keith Lisauskas, Respondent Employee.**

**No. 1 CA–IC 3022.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 13, 1984.

Moore & Long by Joseph L. Moore, Phoenix, for petitioners.

Sandra Day, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Levine & Jarvi by John R. Baker, Scottsdale, for respondent employee.

## OPINION

CORCORAN, Judge.

This is a special action review of an Industrial Commission award for a compensable claim. The sole issue is whether the administrative law judge (ALJ) abused his discretion by denying a request for further hearing which was included in petitioners' Request for Review that alleged newly discovered evidence of fraud. We find no abuse of discretion and affirm the award.

The claims made by petitioner employer and petitioner carrier (petitioners) are in their own words:

(1) The ALJ erred in failing to rule upon petitioners' request for a further hearing so as to determine whether such request for further hearing was pursued with due diligence;

(2) Evidence of perjury which first becomes known after entry of a decision upon hearing mandates the granting of a further hearing once the ALJ has determined that there was no absence of due diligence by the party alleging fraud.

### I. *The Industrial Claim*

On June 6, 1982, the respondent employee Keith Lisauskas (claimant) filed a workers' compensation claim against petitioner employer Mother Tucker's alleging that he fell from a ladder while at work in Phoenix and hurt his back on February 20, 1982.

The claim was denied and the denial protested. On November 30, 1982, claimant took the deposition of co-worker Dennis P. Dowdall because that witness intended to leave town. Petitioners took the deposition of claimant at that same time. Hearings were held on December 29, 1982 and February 1, 1983.

At the December 29 hearing, the claimant testified about his fall off the ladder. He also testified that he reported the incident to the general manager, John T. Hreben. Co-worker Charles R. Creasy testified that he saw the claimant on the ladder painting and that, although he did not see the actual fall, he heard claimant yell, saw him on the floor with the ladder on top of him, and helped lift it off of him. He also confirmed that he heard claimant report the incident to Mr. Hreben. Dowdall testified that he saw Creasy helping the claimant off the floor. The examinations of these three witnesses (including the 38-page Dowdall deposition) were extensive. Claimant submitted all of his testimony on the first hearing day.

At the February 1, 1983 hearing, petitioners presented the testimony of Mr. Hreben and Steven W. Beyer, successor to Mr. Hreben as general manager. Mr. Hreben had indicated in the employer's report the previous August, "We doubt validity of claim because it was never reported to us." Mr. Hreben testified that claimant had not reported to him any injury alleged to have occurred in the course of his employment during the months of January through March, 1982; that he had not specifically asked claimant to do any painting; that claimant was transferred to Mother Tucker's in Dallas, Texas, in March where he worked for almost five months, returning in June, at which time claimant indicated his back was hurting him and that he injured himself in Dallas while painting a ceiling; that before claimant went to Dallas he did not have "even a slight limp" and that when he returned from Dallas he had a slight limp; and that he did not ask claimant whether he was working for Mother Tucker's in Dallas at the time he

injured himself. When Mr. Hreben was asked if he spoke to claimant to ask him about the claimed industrial accident, his response was: "No. Why should I?" When asked if he attempted to interview anybody that was working in the kitchen in February 1982, his response was: "No. Why should I?"

Mr. Beyer was first assistant to Mr. Hreben in February 1982. Mr. Beyer testified that he did not receive any information that claimant sustained an accident or injury or fall in February 1982; that the passageway where claimant claimed to have been painting was not painted for a year after the alleged accident; that claimant complained about his back after he returned from Dallas and that claimant had a limp at that time; that claimant mentioned a ladder and paint, and indicated his injury occurred in Dallas; that the first time he heard about claimant's claim was in January 1983, which would have been after the conclusion of the first hearing day; and that he had not noticed any limp that claimant may have had before he went to Dallas.

At the conclusion of this second hearing day, Joseph L. Moore, Esq., who appeared on behalf of petitioners in September 1982 and has represented them throughout these proceedings, acknowledged that there was a report in the file by Nigel da Silva, D.O., containing the following:

> The patient [claimant], *at the time that I saw him on March 11, 1982*, also described a fall, which he stated occurred at his work. He stated that he fell from a ladder and his back, at the time of being seen, was treated with Hot Packs and Spinalator.

(Emphasis added.) The report refers to a back complaint by claimant made less than a month after the claimed accident, and *before* he was transferred to Dallas. Mr. Moore further acknowledged that there was sufficient medical support for the claim and therefore "it's a credibility question" to be decided by the ALJ. Petitioners did not move for continuance of hearing or further hearing at the conclusion of this two-day hearing. *See* R4–13–156, Rules of

Procedure for Workmen's Compensation Hearings Before the Industrial Commission (hereinafter rule 56).

The ALJ resolved the credibility conflict in claimant's favor and issued an award for a compensable claim. Petitioners filed a request for review requesting that the ALJ reverse the award so granted. The ALJ affirmed the award. As part of the request for review, the petitioners also filed a request for further hearing. This request will be discussed below.

## II. *The Request for Further Hearing*

Rule 56 provides:

Continuance of hearing

A. The granting of a continuance of a hearing shall be discretionary with the presiding hearing officer.

B. If at the conclusion of a hearing held by a hearing officer [administrative law judge], any interested party desires a further hearing for the purpose of introducing further evidence, the party shall state specifically and in detail the nature and substance of the evidence desired to be produced, the names and addresses of the witnesses and the reason why the party was unable to produce such evidence and such witnesses at the time of the hearing. If it appears to the presiding hearing officer that with the exercise of due diligence, such evidence or witness could have been produced, or that such evidence or testimony should be cumulative, immaterial or unnecessary, he may deny the request for a continued hearing. He may, on his own motion, continue a hearing and order such further examinations or investigations as, in his discretion, appear warranted.

Rule 56(B) requires that the petition for further hearing be made at the conclusion of the hearing held by the ALJ. The policy of the rule is to require "adequate pre-hearing preparation in order to achieve the speedy, fair, and final administrative adjudication of workmen's compensation claims." *Wood v. Industrial Comm'n*, 126 Ariz. 259, 261–62, 614 P.2d 340, 342–43 (App.1980). Petitioners' request for further hearing did not comply with Rule 56

because it was not made at the conclusion of the hearing. *Id.; Cf. E.S. Kelton Contr. Co. v. Industrial Comm'n,* 123 Ariz. 485, 600 P.2d 1117 (App.1979) (failure to request subpoena in accordance with pertinent procedural rules).

The request for further hearing filed with the Commission states that the hearing is requested "to impeach lay evidence and that lay witnesses Creasy and Dowdall be subpoenaed to attend said hearing." The affidavit attached to the request states:

> JOSEPH L. MOORE; being first duly sworn, upon his oath deposes and says:
>
> 1. Affiant is the counsel for the defendant employer and defendant carrier [petitioners] and makes this affidavit based upon his own personal knowledge obtained in said capacity;
>
> 2. Subsequent to the hearings held herein, affiant was informed by a representative of the defendant employer [petitioner Mother Tucker's] that time cards, not previously available, disclose that at no time when the applicant's alleged fall from a ladder could have occurred, according to the [claimant] applicant's testimony, were the applicant [and co-workers] Charles Creasy and Dennis Dowdall simultaneously upon the employer's premises.
>
> Further affiant sayeth naught.

The memorandum attached to the request refers to a "discrepancy in the testimony by one or more of the lay witnesses who testified upon the applicant's behalf," "conflicting testimony," and "material discrepancies in the testimony of either or both of said lay witnesses." There is *no* allegation of perjury or fraud in the request, affidavit or memorandum. The memorandum did, however, cite *Southwest Nurseries v. Industrial Comm'n,* 133 Ariz. 171, 650 P.2d 473 (App.1982) without elaboration.

Claimant opposed the request for further hearing alleging petitioners had not demonstrated due diligence and because the purportedly newly discovered evidence was insufficient to warrant a further hearing. The ALJ summarily affirmed the award

without addressing the request for a further hearing. We treat this as a denial of the request for an additional hearing. *Cf. Southwest Nurseries,* 133 Ariz. at 173, 650 P.2d at 475. This special action followed.

It is only in petitioners' opening brief that for the first time the "time cards" alluded to in the affidavit are asserted to show "alleged perjury and fraud." This contention is rejected in the answering brief. Petitioners did not file a reply brief.

■ On this special action review, petitioners argue that they were entitled to a hearing to establish due diligence. We disagree. The affidavit is a bare allegation that the time cards were "not previously available." No explanation is offered for this alleged unavailability. The time cards presumably were always in petitioner employer's possession or control. The identity of the "representative" of the petitioner employer is not disclosed and no explanation is offered as to why that person had not been contacted before the hearings were concluded. No claim is made that the "representative" was "not previously available."

Depositions of claimant and Dowdall were taken two months before, and Creasy testified over one month before the last hearing day. This was ample time to check their testimony against the petitioner employer's records and to otherwise investigate the claim. Furthermore, Mr. Hreben testified that the petitioner employer had not investigated claimant's alleged February 20, 1982 fall. His successor, Mr. Beyer, was not aware of any claim until after the first hearing day. The record from the Commission shows that counsel for petitioners made his appearance on September 28, 1982, that he served interrogatories on claimant on November 18 (which do not appear to have been answered), that he participated in the depositions of claimant and Dowdall on November 30, and that he had subpoenas issued on behalf of witnesses who ultimately testified. The record does not disclose any other investigation of the claim up to the time the ALJ entered

the award for compensable claim in claimant's favor.

 Petitioners next argue that it was an abuse of discretion to deny the further hearing because of the strong policy against fraudulent claims. They rely on *Southwest Nurseries.* There the employee and his girl friend testified that he had no prior serious back problems. The medical expert relied on this history for his causation opinion. After issuance of the award for a compensable claim, the girl friend confessed that she and the employee had lied. The employer and carrier's request for administrative review informed the hearing judge of this new evidence through the affidavit of their attorney, submitted newly obtained medical reports of the employee's prior back injuries which had only become available after the hearing, and requested a further hearing to present this evidence. This request was denied. We concluded based on the affidavit filed by counsel in that case that:

> [i]n light of the *overwhelming evidence of fraud* presented to the administrative law judge, it was a clear abuse of discretion to refuse [the] request for a hearing.

133 Ariz. at 173, 650 P.2d at 475 (emphasis added).

The case before us does not involve overwhelming evidence of fraud. No witness has confessed perjury. The averments by Mr. Moore set forth in the request for further hearing, the memorandum, and his affidavit, simply indicate that petitioners and their counsel had found evidence that would show discrepancies in the testimony of Creasy and Dowdall who testified on behalf of claimant. The averment is general and speculative at best and indeed does not really constitute evidence. It is uncertain whether the touted "evidence" applies to one or both of the co-workers. It is uncertain what the alleged discrepancy is between the time cards and the testimony and what this ultimately implies. Given this speculative showing we find no abuse of discretion.

 The thrust of petitioners' argument regarding the adequacy of the request,

memorandum and affidavit is that rule 56 does *not* apply because the request was not made at the conclusion of the hearing, and *Southwest Nurseries* does not set forth any standard. We reject this argument. Petitioners would have us hold that if they complied with rule 56 by making their request for further hearing at the conclusion of the hearing on February 1, 1983, they would further be required to comply with the substantive strictures of the rule. But, on the other hand, since they waited over two months after the close of the hearing and over a month after the adverse award to submit their request for further hearing, they can require the ALJ to have a hearing based on information which would be substantively inadequate under rule 56. Any reasonable construction of rule 56 would require that a request for further hearing contain more or at least the same justification when it is made *after* the conclusion of the hearing, not *less* as petitioners suggest. We hold that the substantive requirements of rule 56 apply both (1) to requests for further hearing made at the "conclusion of a hearing," and (2) to requests which are made thereafter in cases of fraud.

It is clear from a reading of *Southwest Nurseries* that the request for further hearing in that case complied with rule 56, with the exception that it was not made at the "conclusion of a hearing." It is also clear that the request for further hearing in this case did not "state specifically and in detail the nature and substance of the evidence" which petitioners desire to produce. The name and address of the "representative" of petitioner employer is not disclosed. The reason why petitioners were unable to produce the "time cards" and the "representative" at the time of the hearing is not disclosed. The bald assertion that the time cards were "not previously available" is totally inadequate.

 Rule 56 and the opinions in *Wood* and *Southwest Nurseries* were available to petitioners' counsel both at the time the request for further hearing was filed and later when this special action was filed.

The ALJ was fully justified in summarily affirming the award without granting the request for further hearing given the blatant insufficiency of the request.

Similarly petitioners' reliance on *Southwest Nurseries* is without merit. Petitioners' request for further hearing not only does not state "overwhelming evidence of fraud," it states no evidence of fraud whatsoever but is merely conclusory and relates to purported impeachment evidence.

There is no evidentiary or other basis for this special action. It is meritless and frivolous. Rule 25, Arizona Rules of Civil Appellate Procedure; *Nelson v. Nelson*, 137 Ariz. 213, 669 P.2d 990 (App.1983).

### III. *Attorneys' Fees*

■ By forcing the claimant to respond to this frivolous special action, petitioners not only impose on him the costs of this review, but also delay paying compensation until final appellate disposition. Since claimant's award was not for permanent compensation benefits pursuant to A.R.S. §§ 23–1044 or 23–1045, compensation has not been paid during the period this review has been pending. *See* A.R.S. § 23–952; *Brown v. Industrial Comm'n*, 111 Ariz. 300, 528 P.2d 826 (1974) (interpreting the predecessor statute). Additionally, petitioners waste this court's finite time and resources, retarding the speedy disposition of meritorious causes.

Claimant asserted that this review was frivolous and sought sanctions pursuant to rule 25, Arizona Rules of Civil Appellate Procedure. The request complied with rule 21(c) of those rules and rule 4(f), Arizona Rules of Procedure for Special Actions. *See Ash, Inc. v. Mesa Unified School Dist.*, 138 Ariz. 190, 193, 673 P.2d 934, 937 (App. 1983). Although in some cases it is appropriate to award rule 25 sanctions against counsel only, *Evans v. Arthur*, 139 Ariz. 362, 365, 678 P.2d 943, 946 (1984); *Clemens v. Industrial Comm'n*, 139 Ariz. 486, 679 P.2d 509 (1984), where, as in this case, the petitioners have been the economic beneficiaries of the delay in the payment of medical and compensation benefits to claimant, the award of attorneys' fees should run as against them also. We do not determine as between petitioners and their counsel who should actually pay the attorneys' fees.

We therefore affirm the award of the Industrial Commission and impose on counsel *and* petitioners' costs and reasonable attorneys' fees incurred by claimant in opposing this special action. We direct claimant to file a statement of costs and attorneys' fees pursuant to rule 4(f), Arizona Rules of Procedure for Special Actions, and rule 21, Arizona Rules of Civil Appellate Procedure.

GRANT, P.J., concurs.

FROEB, Vice Chief Judge, concurring in part; dissenting in part.

I concur with the decision except I disagree that the appeal is frivolous and dissent from that portion of the opinion relating to attorneys' fees.