6 P.3d 745

**T.W.M. CUSTOM FRAMING,**
Petitioner Employer,

**State Compensation Fund,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent;**

**Robert Scott Reynolds (Dec'd),**
Respondent Employee.

No. 1 CA–IC 99–0170.

Court of Appeals of Arizona,
Division 1, Department E.

June 29, 2000.

James F. Crane, General Counsel, State Compensation Fund, by Gervais R. Brand, Phoenix, for Petitioner Employer and Carrier.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for Respondent.

Taylor & Associates, PLLC, by Roger A. Schwartz, Phoenix, for Respondent Employee.

## OPINION

BERCH, Presiding Judge.

¶ 1 In this special action review of an Industrial Commission ("IC") case, we must determine whether the employee's suicide was compensable under the workers' compensation law. Three issues are presented on appeal:

(1) Whether sufficient evidence supports the finding of the administrative law judge ("ALJ") that the employee's suicide was substantially related to his industrial injury;

(2) Whether there was sufficient foundation for a psychiatric witness's testimony; and

(3) Whether this Court can substitute its judgment for that of the ALJ.

Because substantial evidence supported the award of death benefits, we affirm.

¶ 2 This Court has jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(2) (1992) and 23–951(A) (1995), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## BACKGROUND

¶ 3 Decedent-employee Reynolds worked as a framing carpenter for the petitioner-employer, TWM Custom Framing. On December 20, 1996, he sustained a compensable industrial injury when he fell fourteen feet and fractured his heels. After receiving medical and surgical treatment, Reynolds attempted to return to his regular work on two separate occasions in late 1997. In January 1998, he was informed that he would not be able to return to his former work as a framer. This information upset and depressed him. On May 21, 1998, one day after having a serious argument with his wife, Reynolds committed suicide. We must determine whether the ALJ correctly ruled that Reyn-

**44**

olds' wife and child ("claimants") should receive death benefits.

## DISCUSSION

### A. Preservation of Issues for Appellate Review

██ ¶4 Before reaching TWM's arguments, we address Claimants' assertion that TWM failed to adequately preserve its issues for appeal. It is true that this Court generally will not consider on appeal issues not raised before the IC. *See Norsworthy v. Industrial Comm'n,* 24 Ariz.App. 73, 74, 535 P.2d 1304, 1305 (1975). This rule stems in part from the requirement that a party must develop its factual record before the agency and give the ALJ the opportunity to correct any legal error. *See Kessen v. Industrial Comm'n,* 195 Ariz. 488, 493, ¶19, 990 P.2d 689, 694 (App.1999) (citing *Phoenix Children's Hosp. v. AHCCCS,* 195 Ariz. 277, 282, ¶18, 987 P.2d 763, 768 (App.1999)). But even in the absence of a specific objection, this Court may review the fundamental issue of the sufficiency of the evidence to support the award and issues extant in the record. *See id.* ¶21, 987 P.2d 763 (citing *Stephens v. Industrial Comm'n,* 114 Ariz. 92, 94–95, 559 P.2d 212, 214–15 (App.1977)). In this case, although TWM did not specifically ask the ALJ to review foundation or sufficiency, on appeal we may consider sufficiency of the evidence to support the award. *See Stephens,* 114 Ariz. at 95, 559 P.2d at 215. The foundation issue is subsumed in the sufficiency question.

### B. The Applicable Law

¶5 Purposely self-inflicted injuries are typically excluded from benefits under the Arizona Workers' Compensation Act. *See* A.R.S. § 23–1021(B) (Supp.1999–2000). The supreme court, however has established that self-inflicted injuries motivated by work-re-

lated mental conditions may not be "purposeful":

> We believe the better rule to be that where the original work-connected injuries suffered by the employee result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, such as severe pain and despair, the self-inflicted injury cannot be considered "purposeful" within the meaning and intent of the Workmen's Compensation Act.

*Graver Tank and Mfg. Co. v. Industrial Comm'n,* 97 Ariz. 256, 260–61, 399 P.2d 664, 668 (1965) (citing *Whitehead v. Keene Roofing Co.,* 43 So.2d 464 (Fla.1949)).

██ ¶6 In 1980, the legislature added to the workers' compensation statutes section 23–1043.01(B) (1995), which governs the compensability of mental injuries. It provides that "[a] mental ... condition ... is not compensable [by workers' compensation] unless ... some physical injury related to the employment was a substantial contributing cause of the mental ... condition."[1] Although neither the parties nor the ALJ discussed or analyzed the statute, we cannot ignore the legislature's pronouncement relating to work-connected mental conditions. *See Evenstad v. State,* 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993) (court may consider applicability of a statute even if not raised in trial court). The question arises whether or how this section affects the *Graver Tank* analysis.[2]

██ ¶7 We conclude that the standards were intended to work together and complement one another as follows: The trier of fact must first determine, as required by section 23–1043.01(B), that a work-related physical injury was "a substantial contributing cause of the mental ... condition" that precipitates a suicide. It must then deter-

---

1. We address only that portion of the statute that concerns mental illness stemming from an underlying industrial injury. We do not address conditions arising from "some unexpected, unusual or extraordinary stress related to the employment." A.R.S. § 23–1043.01(B).

2. In *Findley v. Industrial Comm'n,* 135 Ariz. 273, 276–77, 660 P.2d 874, 877–78 (App.1983), this

court applied section 23–1043.01(B) to a case of suicide stemming from depression resulting from work-related stress. Although the court quoted *Graver Tank,* 135 Ariz. at 277, 660 P.2d at 878, it did not explain the relationship between the standard enunciated in that case and the one set forth in section 23–1043.01(B).

mine, as directed by the supreme court, whether the mental condition caused by the work-related injury so affected the injured employee that he or she became "devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences." *Graver Tank*, 97 Ariz. at 261, 399 P.2d at 668. If the ALJ finds this degree of mental disturbance, then "the self-inflicted injury cannot be considered 'purposeful' within the meaning and intent of the Workmen's Compensation Act," and is therefore a compensable, work-related injury. *See id.*

¶ 8   In this case, the parties failed to expressly demonstrate and the ALJ failed to expressly find the first step of the analysis: whether the employee's job-related physical injury was a substantial contributing cause of the mental condition that motivated him to take his life. This failure to elicit the statutory terms is not necessarily fatal, *see Skyview Cooling Co. v. Industrial Comm'n*, 142 Ariz. 554, 559, 691 P.2d 320, 325 (App.1984); *Findley*, 135 Ariz. at 276, 660 P.2d at 877, but it does impose on this Court the obligation to review the record and ensure that the record supports such a determination. *See Skyview*, 142 Ariz. at 559, 691 P.2d at 325.

■  ¶ 9   The term "substantial contributing cause" is employed in both sections (A) and (B) of A.R.S. section 23–1043.01 (1995), the statute at issue. In connection with A.R.S. section 23–1043.01(A), the term has been interpreted as meaning "more than [an] insubstantial or slight" cause. *See Skyview*, 142 Ariz. at 559, 691 P.2d at 325. We now hold that the term has the same meaning when used in section (B). *See Knoell Bros. Constr., Inc. v. Arizona Dep't of Revenue*, 132 Ariz. 169, 171, 644 P.2d 905, 907 (App. 1982), *abrogated on other grounds by Valencia Energy Co. v. Arizona Dep't of Revenue*, 191 Ariz. 565, 959 P.2d 1256 (1998) ("where the same words or phrases appear in the same statute, they will be given a generally accepted and consistent meaning unless the legislative intent is clearly expressed to the contrary") (citing *Baker v. Salomon*, 31 Ill. App.3d 278, 334 N.E.2d 313, 316 (1975); 82 C.J.S. *Statutes* § 366a at p. 812 (1953)).

■  ¶ 10   The record in this case contains ample evidence that Decedent's injury was "more than an insubstantial or slight" cause of his depression. Dr. Wall, Decedent's treating doctor, testified that Decedent was frustrated by his inability to work. Dr. Kates, a podiatrist who conducted an independent medical examination, noted that Decedent appeared to be frustrated, unhappy, and upset about his inability to work and concerned about his future. Finally, Claimant and Dr. Schulte, a psychiatrist who conducted a psychiatric autopsy, testified that Decedent's depressed mental condition resulted from his work-related injuries. Based on this evidence, we conclude that Claimant has demonstrated that Decedent's injury was a substantial contributing cause of his depressed mental condition. We understand that there was additional testimony that Reynolds was also upset by an argument with his wife. Such testimony does not preclude Decedent's injury from being a substantial cause of the disturbance that caused him to take his life, and the ALJ did not hold otherwise. *See Perry v. Industrial Comm'n*, 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975); *Vance Int'l v. Industrial Comm'n*, 191 Ariz. 98, 100, ¶ 6, 952 P.2d 336, 338 (App.1998) (court defers to ALJ's factual determination).

■  ¶ 11   We next address the *Graver Tank* inquiry—that is, whether the mental condition that was substantially caused by the work injury so deprived the Decedent of "normal judgment" and rendered him so "dominated by a disturbance of mind" that his action in committing suicide cannot be said to be " 'purposeful' within the meaning and intent of the Work[ers'] Compensation Act." 97 Ariz. at 261, 399 P.2d at 668.

■  ¶ 12   Generally, if the cause of an injury or condition "is not clearly apparent ..., the causal relationship of the accident to the physical or mental condition complained of must be established by expert medical testimony." *Reynolds Metals Co. v. Industrial Comm'n*, 119 Ariz. 566, 569, 582 P.2d 656, 659 (App.1978) (citing *Eldorado Ins. Co. v. Industrial Comm'n*, 27 Ariz.App. 667, 558 P.2d 32 (1976)). Claimants bear the burden of establishing all material elements

of their claim, including causation and, in IC cases, the necessary connection to a work-related injury. *See In re Estate of Bedwell,* 104 Ariz. 443, 444–45, 454 P.2d 985, 986–87 (1969).

¶ 13  The record before us reflects that Claimants presented ample evidence to support their claim. The ALJ received testimony from Decedent's widow and daughter, his employers and several co-workers, his treating orthopedist, an independent examining podiatrist, and two psychiatrists who, not having treated Decedent in life, performed "psychiatric autopsies." The ALJ specifically found the widow's testimony credible and resolved conflicts in the evidence in her favor. *See Holding v. Industrial Comm'n,* 139 Ariz. 548, 551, 679 P.2d 571, 574 (App.1984) (ALJ is "sole judge of witness credibility"). Although the ALJ considered all of the medical testimony, he found that the resolution of the case turned on the psychiatric opinions of Dr. Schulte and Dr. Potts. He resolved that conflict in favor of Dr. Schulte and awarded the widow and daughter death benefits pursuant to A.R.S. section 23–1046.

## C.  Specific Objections to Evidence

### 1.  Reliance on Psychiatric Autopsy

■  ¶ 14  TWM argues that Dr. Schulte's psychiatric autopsy, standing alone, cannot constitute sufficient evidence to support the award in light of contrary testimony from the treating orthopedist, Dr. Thomas J. Wall, and podiatrist, Dr. Michael J. Kates.[3]

¶ 15  In making its argument that Dr. Schulte's "psychiatric autopsy" does not provide sufficient evidence to support the award, TWM relies on *Rutledge v. Industrial*

*Comm'n,* 108 Ariz. 61, 492 P.2d 1168 (1972), and *Pais v. Industrial Comm'n,* 108 Ariz. 68, 492 P.2d 1175 (1972). In each of these cases, the court found the testimony of non-examining doctors, who testified based solely on a review of the claimant's file, not to constitute substantial evidence that would give rise to a conflict of opinion with a treating or examining doctor. TWM asserts that the testimony of Dr. Schulte, a non-treating doctor, should similarly not be found to constitute substantial evidence that would create a conflict with the testimony of Dr. Wall.

¶ 16  In this case, after considering testimony from Claimant, Dr. Wall, and several other witnesses, the ALJ concluded that his decision turned on the psychiatric opinions provided by Dr. Schulte and Dr. Potts. Neither Dr. Schulte nor Dr. Potts had the opportunity to examine Decedent before his death. To that extent, their opinions stand on equal footing. Because both doctors relied upon substantially similar information—the records of others, supplemented by depositions and interviews—we find this case distinguishable from *Rutledge* and *Pais* and conclude that, in this unusual case, a review such as that done by Dr. Schulte provides sufficient evidence to support the award.

■  ¶ 17  Because the reason for Decedent's suicide was not clearly apparent, the causal links among the industrial accident and Decedent's mental condition and subsequent suicide had to be established by expert medical testimony. *See Reynolds Metals Co.,* 119 Ariz. at 569, 582 P.2d at 659. In a suicide case, the non-treating psychiatric expert cannot determine the cause of the mental condition that precipitates a suicide by a

**3.**  Their testimony, however, was not completely contrary to that of Dr. Schulte: Both Dr. Wall and Dr. Kates indicated that Decedent seemed upset or frustrated by his inability to engage in his regular occupation. Dr. Wall, an orthopedic surgeon who provided medical and surgical treatment to Decedent for approximately one year immediately following his industrial injury, testified that, during his office visits, Decedent indicated frustration with his inability to get back to work, although he did say that he felt that Decedent's "depression [was] not severe enough to be recommended for treatment; not at least while he was in the office." Dr. Kates saw Decedent on only one occasion in 1998 for an

independent podiatry examination. Dr. Kates testified that Decedent had a severe, abnormal, unstable, almost waddling gait and that heel fractures were very difficult to recover from and would continue to be symptomatic. He testified that Decedent appeared to be frustrated, unhappy, upset, and concerned about what he would be able to do in the future. When asked to opine whether Decedent was depressed, Dr. Kates stated that that was not an appropriate area for him to comment upon. *Cf., e.g, Chalupa v. Industrial Comm'n,* 109 Ariz. 340, 341–42, 509 P.2d 610, 611–12 (1973) (expert is competent to give opinion only about the cause of a condition he is licensed to treat).

physical examination or autopsy of the decedent; the non-treating psychiatric expert's only method for determining the cause of suicide is to examine records and interview a decedent's family, friends, and acquaintances. Therefore, in the unique situation of a suicide, in which the decedent is by definition unavailable for psychological examination, an expert's testimony based on a "psychological autopsy" might support findings that (1) an industrial injury "substantially caused" a mental condition, *see* A.R.S. § 23–1043.01(B), and (2) as a result of the mental condition, a decedent was deprived of "normal judgment" and rendered so "dominated by a disturbance of mind" that the act of suicide cannot be deemed "purposeful." *See Graver Tank,* 97 Ariz. at 261, 399 P.2d at 669.

### 2. *Foundation for Dr. Schulte's Testimony*

¶ 18   TWM next argues that the foundation for Dr. Schulte's testimony was inadequate because he relied heavily on Decedent's widow's testimony to formulate his opinions and her testimony was contradicted by other testimony. To support an award, a medical opinion must be based on findings of medical fact. *See Royal Globe Ins. Co. v. Industrial Comm'n,* 20 Ariz.App. 432, 434, 513 P.2d 970, 972 (1973) (citing *Hemphill v. Industrial Comm'n,* 91 Ariz. 322, 372 P.2d 327 (1962)). Typically these findings come from the claimant's history, medical records, diagnostic tests, and examinations. *See id.* While this Court has recognized that "medical testimony can be so weakened by proof of an inaccurate factual background that the testimony cannot be said to constitute 'substantial evidence,'" *Desert Insulations v. Industrial Comm'n,* 134 Ariz. 148, 151, 654 P.2d 296, 299 (App.1982) (citations omitted), we have also recognized that positive knowledge of causation is not always possible and this uncertainty will not prevent a physician from stating a legally sufficient opinion. *See Harbor Ins. Co. v. Industrial Comm'n,* 25 Ariz.App. 610, 612, 545 P.2d 458, 460 (1976).

¶ 19   Dr. Schulte, who is board certified in psychiatry, neurology, and addictionology, testified that to prepare his opinion, he reviewed Decedent's wife's deposition, Dr. Kates' IME, Dr. Wall's hospital and surgical records, Scottsdale Memorial Hospital's records, Kimberly Quality Care's rehabilitation records, police reports, and portions of the February 9, 1999 hearing transcripts during which testimony was received from Decedent's widow and daughter, employer and co-workers, and Dr. Kates. In addition to this information, Dr. Schulte interviewed Claimant-wife, Decedent's widow, for one and one-half hours. He relied most heavily on the information from the widow because she was the one person who possessed the whole picture of Decedent's life and condition, and he found her to be very credible.

¶ 20   Based on this information, Dr. Schulte testified that in 1998, the Decedent developed progressive symptoms of depression. These included anger, irritability, hopelessness, loss of appetite, loss of weight, social isolation, insomnia, escalating alcohol use, and loss of enjoyment of favorite activities such as fishing. He diagnosed major depression with psychosis, alcohol and marijuana abuse, and chronic pain. He affirmed that Decedent's industrial injury and its consequences met the *Graver Tank* standard because they caused Decedent to be "devoid of normal judgment and dominated by a disturbance of the mind" so that his self-inflicted injury could not be considered "purposeful." The doctor noted that although the Decedent had ups and downs, before suffering the industrial injury he functioned well in his life and chosen profession, and it was not until after the industrial injury and the inability to return to work that he began to deteriorate. For all of these reasons, Dr. Schulte testified that without the industrial injury and its consequences, Decedent would not have committed suicide. Given Dr. Schulte's expertise and the research he conducted before rendering his opinion, and based on the ALJ's resolution of the credibility conflicts, we conclude that Dr. Schulte's testimony had appropriate foundation and provided sufficient evidence to support the award.

### 3. *Independent Review of Record*

¶ 21   TWM last argues that, because Dr. Wall testified by deposition and Dr. Schulte

testified by telephone, this Court is situated similarly to the ALJ to make factual findings and may therefore substitute its judgment for that of the ALJ and set aside the award. TWM's expert, Dr. Potts, testified in person. Therefore, the testimony of the two experts on whose credibility the ALJ found the case turned did not both present testimony of which we can conduct a "paper review." Even had they done so, however, we would have deferred to the findings of the ALJ. *See Perry,* 112 Ariz. at 398, 542 P.2d at 1097.

■ ¶ 22 Moreover, the ALJ received in-person testimony from at least nine other lay and medical witnesses over the course of four separate IC hearings. In *Perry,* this Court acknowledged the long-standing rule that if a hearing officer hears live testimony and observes the witnesses, we will sustain the award if any credible evidence supports it. *See id.* We review the ALJ's interpretation only to see whether its conclusions can "be reasonably supported on any reasonable theory of the evidence." *Id.* at 398–99, 542 P.2d at 1097–98. In this case, however, only two of the witnesses failed to personally appear before the ALJ and in neither of those instances did TWM's counsel object to the proffered form of testimony. Of those two, one—Dr. Schulte—appeared telephonically. We view telephonic testimony as different from a mere transcription of testimony because the telephonic medium preserves paralinguistic features such as pitch, intonation, and pauses that may assist an ALJ in making determinations of credibility.

¶ 23 ALJs are not bound by the formal rules of evidence or procedure and are charged with conducting the hearing in a manner that achieves substantial justice. *See* A.R.S. § 23–941(F) (1995). We conclude that substantial justice resulted here.

4. *Was the Appeal Frivolous?*

■ ¶ 24 Finally, we address Claimants' argument that we should grant their attorneys' fees because TWM's appeal was frivolous. *See Mother Tucker's Food Experience v. Industrial Comm'n,* 142 Ariz. 496, 501, 690 P.2d 797, 801 (App.1984). Because this case was factually complex and involved a largely

uncharted territory of psychiatric autopsy and appropriate standards, we do not find the appeal frivolous. For that reason, we deny the request for attorneys' fees and costs.

¶ 25 For the foregoing reasons, the award is affirmed.

CONCURRING: RUDOLPH J. GERBER, Judge, and ANN A. SCOTT TIMMER, Judge.