NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DEBORAH C. DOSS, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

WALMART STORES, INC., *Respondent Employer,*

WALMART ASSOCIATES, INC. C/O CLAIMS MANAGEMENT, INC., *Respondent Insurance Carrier.*

No. 1 CA-IC 15-0036
FILED 2-25-2016

Special Action - Industrial Commission
ICA Claim No. 20110-740076
Carrier Claim No. 6291119

Anthony Halas, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Deborah C. Doss, Carlsbad, New Mexico
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent Industrial Commission of Arizona*

Hoffman Kelley Lopez, L.L.P., Scottsdale
By Anthony B. Eskridge
*Counsel for Respondent Employer and Respondent Insurance Carrier*

---

### MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

---

**W I N T H R O P,** Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding the petitioner employee, Deborah C. Doss ("Doss") medically stationary and without permanent impairment, work restrictions, or the need for continuing supportive care. The administrative law judge ("ALJ") resolved the issues in favor of the respondent employer, Wal-Mart Stores, Inc. ("Wal-Mart") and the respondent carrier, Wal-Mart Associates, Inc. c/o Claims Management, Inc. (collectively, "Respondents"). Because the ALJ's determinations are reasonably supported by substantial evidence, we affirm the award and decision upon review.

### FACTS AND PROCEDURAL HISTORY

**¶2** On March 6, 2011, while in the course of her work for Wal-Mart d/b/a Sam's Club, Doss sustained a compensable industrial injury to her lower back when she attempted to lift a large bag of dog food to scan the price. She finished her shift and was taken to Concentra for medical care, where she began receiving conservative treatment, including physical therapy, for her low back pain. Doss filed a claim for workers' compensation benefits, which was accepted by the industrial insurance carrier.

**¶3** Doss initially saw Richard K. Burger, M.D., who referred her to Michael Wolff, M.D., whom she saw several times. Dr. Wolff provided a facet injection, which did not help, and Doss continued to experience axial low back pain. On May 23, 2011, Doss underwent an MRI of her lumbar spine, which revealed findings of multi-level spondylosis, a pre-existing degenerative condition.

2

¶4              In June 2011, Doss came under the care of Dr. Wolff's associate, Jason R. Sherman, M.D., a board-certified physician in physical medicine and rehabilitation. Doss complained of left-side low back pain and occasional symptoms in her left lower extremity, and stated she had no similar symptoms before her March 2011 injury. Upon examination, Dr. Sherman found no significant signs of radiculopathy into Doss's lower extremities. Based on the May 2011 MRI, Dr. Sherman thought a disc bulge and annular tear at L4-5 likely had been caused by the March 2011 incident and was contributing to Doss's axial back pain, which she described as worse with almost any physical activity.

¶5              Dr. Sherman prescribed physical therapy, medication, and epidural injections along Doss's lumbar spine. Doss reported that the first injection—on May 29, 2012—provided approximately fifty percent relief, and a second injection—on July 26, 2012—caused Doss to state she was amazed at the improvement in her condition. Dr. Sherman's next chart note—on October 11, 2012—indicated the injection had provided one hundred percent relief. At that time, Dr. Sherman declared Doss's condition attributable to the March 2011 industrial injury to be medically stationary. According to Doss, the relief from the July 2012 injection lasted three or four months, during which she was back to her normal activities—including riding her bike—and did not take any pain medication or see her doctor.

¶6              In a December 6, 2012 follow-up meeting with Dr. Sherman, however, Doss reported she had experienced progressive worsening of her low back pain (up to fifty percent), with similar left-sided low back and left leg symptoms upon returning to work. Dr. Sherman continued to provide Doss with conservative treatment, including medication and epidural injections, but the injections reportedly provided no relief.

¶7              Dr. Sherman ordered an MRI performed on April 8, 2013. Also, on April 24, 2013, Terry E. McLean, M.D., performed an independent medical examination ("IME") of Doss. On May 13, 2013, Dr. Sherman referred Doss to Jonathan Landsman, M.D., who believed Doss might be a candidate for spinal fusion surgery in the future, but wanted to first review Dr. McLean's IME, and recommended pain management in the interim. On June 18, 2013, Doss again saw Dr. McLean, who concluded surgery was not indicated and opined that Doss's 2011 industrial injury could have aggravated a pre-existing spondylolisthesis at L4-5, with axial low back symptoms similar to those caused by an annular tear. Doss returned to Dr. Sherman, who continued conservative care, including another injection and

more physical therapy. The last time Doss saw Dr. Sherman was February 5, 2014.[1]

¶8    Meanwhile, on January 22, 2014, Doss attended an IME conducted by Paul E. Palmer, M.D., a board-certified orthopedic surgeon, and Carol J. Peairs, M.D., a board-certified anesthesiologist with a subspecialty board certification in pain management, both of whom examined Doss in person. Drs. Palmer and Peairs determined Doss to be medically stationary without permanent impairment. On February 5, 2014, based on the IME report by Drs. Peairs and Palmer, the respondent carrier issued a notice of claim status closing Doss's claim for benefits without permanent disability, effective January 22, 2014.

¶9    On February 26, 2014, Doss timely requested a hearing protesting the closure of her claim. The issues to be considered by the ALJ were whether Doss's industrial injury was medically stationary, and if so, whether she had sustained a ratable permanent impairment necessitating additional active or supportive care.

¶10    The ALJ held formal hearings on September 29, 2014, and January 15, February 3, and February 10, 2015. At the hearings, the ALJ heard testimony from Doss and Drs. Sherman, Palmer, and Peairs. The ALJ also received medical evidence in the form of reports of diagnostic studies, the treatment records of Drs. Wolff, Landsman, and Sherman, and the IME reports and addenda of Drs. McLean, Palmer, and Peairs.

¶11    On April 27, 2015, the ALJ issued his award. After considering the testimony of Doss, and the medical records and testimony, the ALJ resolved the conflicting medical conclusions in favor of Drs. Palmer and Peairs as more probably correct and well-founded than that of Dr. Sherman. The ALJ found Doss medically stationary and "without permanent impairment, without work restrictions, and without need for supportive care" as of January 22, 2014. The ALJ awarded Doss medical, surgical, and hospital benefits, and temporary total or temporary partial disability benefits, from March 6, 2011, through January 22, 2014.

¶12    On May 27, 2015, Doss requested review of the ALJ's award, arguing the ALJ improperly relied on Dr. Peairs' testimony to reach a causation opinion, and the medical opinions of Drs. Palmer and Peairs were not reasonably supported by the evidence. On June 11, 2015, Respondents

---

[1]    Doss subsequently saw her primary care physician for her back pain.

filed their response to Doss's request for review. On June 15, 2015, the ALJ issued his decision upon review summarily affirming the award.

¶13        On July 14, 2015, Doss filed this timely petition for special action. We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2) (2003) and 23-951(A) (2012), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

**ANALYSIS**

   *I.     Standard of Review*

¶14        In general, Doss bears the burden of establishing the material elements of her claim, including that her condition is causally related to the industrial accident and that she is not medically stationary, or if so, that she has sustained a permanent disability. *See Estate of Bedwell v. Indus. Comm'n*, 104 Ariz. 443, 444, 454 P.2d 985, 986 (1969); *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 216, 439 P.2d 485, 488 (1968); *T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 45-46, ¶ 12, 6 P.3d 745, 749-50 (App. 2000); *Spears v. Indus. Comm'n*, 20 Ariz. App. 406, 407, 513 P.2d 695, 696 (1973). If it is not readily apparent to a layman whether a claimant has residual disability resulting from an industrial accident, the need for further treatment is essentially a medical question to be answered by expert medical evidence. *See Yates v. Indus. Comm'n*, 116 Ariz. 125, 127, 568 P.2d 432, 434 (App. 1977); *Spears*, 20 Ariz. App. at 407, 513 P.2d at 696. The ALJ resolves conflicts in the medical evidence, draws warranted inferences, and is the sole judge of the witnesses' credibility. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988); *Malinski*, 103 Ariz. at 217, 439 P.2d at 489; *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984).

¶15        In our review of the ALJ's award, we deferentially review the ALJ's factual findings, but independently review any legal conclusions. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003) (citing *PFS v. Indus. Comm'n*, 191 Ariz. 274, 277, 955 P.2d 30, 33 (App. 1997)). Further, we do not weigh conflicting evidence, but consider the facts and inferences therefrom in the light most favorable to sustaining the award. *See Malinski*, 103 Ariz. at 216, 439 P.2d at 488; *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002); *United States Fid. & Guar. Co. v. Indus. Comm'n*, 114 Ariz. 472, 476, 561 P.2d 1244, 1248 (App. 1977). We will uphold the ALJ's findings if reasonably supported by substantial evidence, even if we, sitting as a trier of fact, might reach a different conclusion. *See generally Carousel Snack Bar*, 156 Ariz. at 46, 749 P.2d at 1367;

*Perry v. Indus. Comm'n*, 112 Ariz. 397, 398-99, 542 P.2d 1096, 1097-98 (1975); *Malinski*, 103 Ariz. at 216-17, 439 P.2d at 488-89.

    II.    The Merits

**¶16**        Doss argues the ALJ erred in not adopting the opinions of her treating physicians—most specifically, that of Dr. Sherman—and instead relying on the opinions of Drs. Palmer and Peairs in finding her medically stationary without a permanent impairment.  In essence, her argument appears to primarily be that the ALJ wrongly adopted Dr. Palmer's opinion, not based on any error of judgment or expertise on the part of Dr. Palmer, but based on duration of treatment.

**¶17**        At Doss's hearings, Dr. Sherman testified, consistent with his medical chart, that after Doss's December 2012 follow-up visit, at which she reported worsening of her low back pain, he tried diagnostic medial branch blocks, but they did not have a positive response, so a possible diagnosis involving the facet joints was ruled out, and he thought her symptoms were consistent with an annular tear.  He also acknowledged as valid Dr. McLean's opinion that Doss's injury could have aggravated a pre-existing spondylolisthesis at L4-5, causing axial low back symptoms similar to those caused by an annular tear.  Dr. Sherman disagreed, however, with the conclusions of Drs. Palmer and Peairs that Doss's symptoms since December 2012 were related to pre-existing degenerative disc and joint disease.

**¶18**        Because he had determined Doss was not a surgical candidate, Dr. Sherman continued to use medication as the basic treatment modality.  Dr. Sherman opined that, by February 5, 2014—the time of Doss's last examination by Dr. Sherman—Doss was at maximal medical improvement per the Sixth Edition of the American Medical Association ("AMA") Guides to the Evaluation of Permanent Impairment ("Guides"), and was permanent and stationary with a three percent impairment of the whole person.  *See* AMA Guides 570, Table 17-4 (6th ed. 2009).  Dr. Sherman recommended supportive care for a year consisting of three doctor visits, anti-inflammatory medication, and six to twelve physical therapy sessions. He explained that, following an injection like the one Doss received on July 26, 2012, a person's pain would likely go away due to resolution of the inflammation and not come back unless the person re-aggravated the problem.

**¶19**        Dr. Palmer testified, consistent with his IME report and addendum, that he understood that after her industrial injury, Doss had

received conservative medical care, including epidural injections by Dr. Sherman in May and July 2012, after which she had complete resolution of her symptoms for several months. Dr. Palmer opined this was consistent with resolution of a soft tissue lumbar sprain/strain attributable to Doss's March 2011 accident. To the extent Doss had a subsequent onset of symptoms, with medial branch blocks ineffective, he concluded that such symptoms were attributable to pre-existing lumbar spine degenerative changes, including the annular tear at L4-5 seen on the May 2011 and April 2013 MRIs, with no significant change by the time of the April 2013 MRI. At the time of his January 2014 examination of Doss, Dr. Palmer noted that although Doss continued with complaints of low back pain, he found no significant abnormal objective physical findings of any residuals from either Doss's March 2011 injury or her pre-existing degenerative changes. Doss had full range of motion, no evidence of muscle tension or spasm, and normal strength, reflexes, and sensation, with no evidence of sacroiliac dysfunction, no radiculopathy, and extension of the lumbar spine well-tolerated. Dr. Palmer concluded that Doss had sustained a lumbar strain/sprain as a result of the March 2011 incident, which had resolved after the one hundred percent relief she received from the epidural injections in the summer of 2012, without ratable permanent impairment, work restrictions, or need for supportive care due to her industrial injury.

¶20 Dr. Peairs testified, consistent with her IME report and addendum, that her understanding of Doss's industrial injury and subsequent treatment was in accord with Dr. Palmer, and she noted, as had Dr. Palmer, that Dr. Sherman had reported Doss to have had one hundred percent relief for several months after July 2012. The subsequent onset of symptoms several months later had been treated by Dr. Sherman with medial branch blocks, which Dr. Peairs understood were ineffective and not diagnostic for any facet joint dysfunction. According to Dr. Peairs, at the time of Doss's January 2014 IME exam, Doss described left lower back pain, and pain over the left posterior iliac crest with general achiness. Clinically, however, her findings were objectively normal, with Doss's reflexes, sensation, and motor strength all intact, with no spasm, no sacroiliac joint dysfunction, and no radiculopathy. Dr. Peairs opined that Doss had sustained a lumber sprain/strain related to the March 2011 incident, from which Doss had recovered by October 2012, after the complete relief provided by the epidural steroid injections in May and July 2012, which had resolved the inflammation. Dr. Peairs also noted Doss had MRI evidence of a lumbar spine condition pre-dating the March 2011 incident, but Doss was without symptoms consistent with that condition at the time of the January 2014 IME. Dr. Peairs opined that Doss was medically stationary in relation to her industrial injury, without ratable permanent impairment.

Further, although Dr. Peairs thought the supportive care recommended by Dr. Sherman might be appropriate when Doss experienced symptoms consistent with her degenerative lumbar spine condition, Dr. Peairs did not consider such care to be related to Doss's industrial injury.

**¶21** In this case, after considering the substantial evidence introduced by both parties, and the testimonial conflicts among the witnesses, the ALJ found that the medical conclusions of Dr. Palmer, supported by Dr. Peairs, were more probably correct and well-founded than those of Dr. Sherman. Evidence in the record indicated that, following the July 2012 injection, Doss experienced one hundred percent relief from the pain brought on by the industrial injury, which led Dr. Palmer to believe the condition had resolved to baseline. After the pain eventually returned, Dr. Palmer concluded that some other incident, unrelated to the March 2011 industrial incident, had caused the return of the pain, which was likely related to Doss's nonindustrial pre-existing degenerative condition. The ALJ resolved the conflict of medical opinion in favor of Respondents, and substantial evidence reasonably supports the ALJ's conclusions. Moreover, although Doss suggests otherwise, nothing precluded the ALJ from adopting the opinion of the IME physicians as more probably correct than that of Doss's treating physician. We find no abuse of the ALJ's discretion in resolving the conflict in the evidence in favor of Respondents.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the ALJ's award and decision upon review finding Doss medically stationary and without permanent impairment, work restrictions, or the need for continuing supportive care. Respondents are awarded their taxable costs on appeal, subject to compliance with Rule 21, ARCAP.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama