553 P.2d 248

Susan O. **RADLEIN**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent,

Sky Chefs, Inc., Respondent Employer, Fidelity & Casualty Co. of N. Y., Respondent Carrier.

**No. I CA–IC 1435.**

Court of Appeals of Arizona, Division 1, Department C.

July 13, 1976.

Harvey S. Brown, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Jones, Teilborg, Sanders, Haga & Parks, P. C., by William R. Jones, Jr. and Joseph L. Moore, Phoenix, for respondent employer and respondent carrier.

## OPINION

HAIRE, Chief Judge, Division 1.

On this review of an award entered by respondent Commission, the court must determine whether there was reasonable evidence to support the hearing officer's decision that petitioner, Susan Radlein, who sustained an industrial injury on April 19, 1974, had become stationary with no permanent disability. We have reviewed the medical evidence which necessarily formed the basis for the termination of benefits and conclude that there was sufficient evidence to support the hearing officer's award.

On April 19, 1974, Susan Radlein, while employed as an accounting clerk by respondent Sky Chefs, Inc., sustained an industrial injury when a large picture fell, striking her just above the right eyebrow. Thereafter, and continuing to the time of hearings on this matter, according to petitioner's testimony she suffered pain from headaches as well as some degree of blurred vision. These problems prompted petitioner to seek medical attention from several physicians, including Stanley R. Friedman, M.D., a neurologist, who treated petitioner six days after the accident and on numerous occasions thereafter, and who also testified before the Commission's hearing officer.

On October 10, 1974, at the request of respondent insurance carrier, a group consultation was scheduled at which four physicians examined petitioner: Drs. Stanford Hartman, Walter E. George, Walter Edwards and George Hoffmann. The report they authored conclued that they were:

". . . unable to find any objective findings that can be related to the blow to the right eyebrow area. Secondly, the headaches which the patient now exhibits are those of a musculotendonis [sic] type which are felt to be related to tension."

After issuance of this report by the consultation group, the carrier solicited Dr. Friedman's opinion of the report and asked whether he also felt that petitioner could be discharged with no permanent disability. Dr. Friedman's response was:

"I have read the consultant's report and I cannot disagree with their conclusions and recommendations."

Thereafter, the carrier issued its notice of claim status terminating benefits.

Subsequent to termination of benefits, but prior to hearings held at the request of petitioner in protest of the termination of benefits, petitioner was re-examined by Dr. Hoffmann, the neurologist who participated in the October 10, 1974 consultation group. In his 1975 medical report and his testimony at the hearing before the Commission, Dr. Hoffmann said that he believed petitioner's complaints to be real, that in his opinion the industrial injury had caused a fibrosis which was interfering with circulation, resulting in the headache pains. He also testified, however, that it was equally possible that petitioner's headaches had some other cause and that unless in the future she would communicate with him better, he would refuse to treat her.

Petitioner contends that the testimony of Dr. Hoffmann must be accepted over the group consultation report and the testimony of the other two physicians who testified at the hearing, Drs. Hartman and Friedman.

Dr. Hoffmann's testimony, while susceptible to an inetrpretation of a reasonable degree of medical probability that petitioner was still suffering from the effects of her industrial accident at the time of her hearing, could also have been viewed as being somewhat speculative inasmuch as he testified that other causes for petitioner's headaches were "equally possible". However, assuming that Dr. Hoffmann's testimony would have supported a conclusion by the hearing officer that petitioner's condition was not yet stationary or free of disability, we cannot say, as petitioner does, that neither the October 10, 1974 consultation report, the testimony of Dr. Hartman based on that report, nor the testimony of Dr. Friedman based on numerous examinations of petitioner between April 25, 1974 and July 1974, could support a conclusion that petitioner's condition was stationary with no permanent disability as of October 10, 1974.

The consultation report itself was unequivocal in its conclusion. It was based on a full and accurate history of petitioner's accident. It noted that she had previously been examined by a Dr. Schwartz who found "no ocular pathology"; by Dr. Van Epps whose neurological examination was normal, by a psychiatrist and by an internist. While the consultants expressed their "belief" that petitioner was able to return to her employment, we attach no particular significance to their choice of words and disagree with petitioner that the "tenor" of the report suggests that the opinion amounted to something less than a reasonable medical probability. Laymen are not required to utter magic words when testifying before a judicial body to their opinions on subjects within their realm of expertise. The courts must take a common sense approach and give such testimony the meaning which would in normal speech be intended.

The testimony of Dr. Hartman at the hearing was likewise clear that he found no disability at the time of the October 10, 1974 examination and that he believed that none existed thereafter which was causally related to the industrial accident.

Finally, the testimony of Dr. Friedman was also clear and unequivocal at the hearing that there was no neurological cause for petitioner's problems. We do feel that it would have been helpful if the hearing officer had allowed Dr. Friedman to respond to the question propounded by counsel for petitioner, asking whether the medical reports of Dr. Hoffmann, which were based on his May 1975 examination, would now cause Dr. Friedman to change the opinion he had previously expressed in October 1974, as to petitioner's medical status. Without answering this question directly, however, Dr. Friedman, after having read Dr. Hoffmann's May 1975 report, concluded his testimony with the comment:

> "I did not turn up a neurological cause and I do not think there is a neurological cause."

■ The testimony of Drs. Hartman and Friedman, and the report of the medical consultation group, were sufficient evidence upon which the hearing officer could have based his conclusion that petitioner's condition was stationary with no permanent disability. Standing by itself, the fact that Dr. Hoffmann's opinion was based on an examination different in kind and later in time than those of the other physicians, is not sufficient to require adoption of Dr. Hoffmann's opinion over the opinions of the other physicians. *See Castillo v. Industrial Commission of Arizona,* 24 Ariz. App. 315, 538 P.2d 402 (1975); *McMurray v. Industrial Commission,* 25 Ariz.App. 614, 545 P.2d 462 (1976).

■ As we stated in *Janis v. Industrial Commission* (filed July 1, 1976) (not yet released for publication, review pending. Arizona Supreme Court):

"While it is the condition of a claimant at the time of the hearing which determines whether his condition is stationary, *Garcia v. Industrial Commission,* 26 Ariz.App. 313, 548 P.2d 26 (1976); *Russell v. Industrial Commission of Arizona,* 104 Ariz. 548, 456 P.2d 918 (1969), the chronology of the medical examinations is not wholly determinative of which physician's testimony must be accepted. Otherwise the result would be a game between the parties to have the physicians favorable to their position make the last examination prior to hearing. Such an approach would of course be absurd."

■ This Court is aware of the serious medical proof problems created where there is a long delay between the time of issuance of a carrier's notice of claim status and a subsequent hearing scheduled for the purpose of resolving controversies between the carrier and the claimant on medical issues. The choice to be made by the hearing officer between conflicting testimony of expert medical witnesses who may have examined the claimant at widely differing points in time is not an easy one. No set mechanistic standard can be applied by this Court in determining whether he has abused his discretion in making that choice. We can say that in making his choice, among the factors that the hearing officer should consider are the extent of the time interval involved, the nature of the injury, and the relative expertise of the medical witnesses and the diagnostic tools utilized. No one factor is necessarily controlling—it is the totality of the circumstances which we must examine in reviewing the exercise by the hearing officer of his discretion.

As we have previously stated, in reviewing the record here, we cannot find that the hearing officer abused his discretion.

The award is affirmed.

EUBANK, P. J., and FROEB, J., concurring.