749 P.2d 1364

**CAROUSEL SNACK BAR,**
Petitioner Employer,

**Aetna Fire Underwriters Insurance
Company,. c/o INA/Aetna,**
Petitioner Carrier,

v.

**INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Lynn E. Hoskin, Respondent Employee.**

**No. CV 87–0160–PR.**

Supreme Court of Arizona,
In Banc.

Jan. 14, 1988.

Long & Lester by James B. Long and
Joseph L. Moore, Phoenix, for petitioner
employer/carrier.

Dennis P. Kavanaugh, Chief Counsel,
Phoenix, for respondent.

Charles M. Wilmer, Phoenix, for respondent employee.

CAMERON, Justice.

### I. JURISDICTION

Lynn Hoskin, claimant, seeks review of a
court of appeals' decision to set aside an
award of the Industrial Commission of Arizona (Commission). We have jurisdiction
pursuant to Ariz. Const. art. 6, § 5(3) and
A.R.S. § 23–948.

### II. ISSUE PRESENTED

We address the following issue:

1. Must an award for an unscheduled
   permanent partial disability be set
   aside for failure to numerically rate
   the extent of the impairment?

### III. FACTS

Claimant sustained an injury to her back
during the course of her employment with
Carousel Snack Bar (Employer) on 21 October 1982. Aetna Fire Underwriters Insurance Company (Carrier) accepted a claim
for benefits filed by claimant following the
injury. In January 1984, Carrier issued a
notice of claim status closing the claim
with no permanent disability, effective 9
January 1984. Claimant timely protested
the decision and a hearing was conducted.
At the hearing, the following testimony
was given by John Gelsey, M.D.:

    Q. [By Mr. Wilmer, claiment's attorney]
    In referring to that same note that Mr.
    Moore talked about from Dr. Zoltan,
    you, in your initial report I believe of

either May or July of 1984 essentially agreed with the restrictions that Dr. Zoltan placed on her, and in that regard Dr. Zoltan apparently agreed, or I think was close to agreeing that she was stationary at that point in time, where he states she was reaching a stationary phase and he says *once the stationary phase is reached a five percent permanent impairment will ensue* with the above restrictions remaining.

Is that essentially the comment with respect to impairment and restrictions that result from this injury on a contributory basis that you referred to in your earlier testimony?

A. [Dr. Gelsey] The statement as I read it, and I have no conflict with the statement, I make my disability determination strictly out of the book, a little fudge factory. *If my book and his book match up, then it comes out five percent.* Okay?

Q. Have you looked at your book?

A. It's the American Academy of Orthopaedic Surgeons, and *it would be five percent.*

Q. Five percent?

A. *Or five, seven, three, depending on how you want to do it.*

Q. Five, Seven, Three?

A. It's just plus or minus points for pain and subjective, but *I would not argue with five.*

Q. Five percent impairment of the whole person?

A. Yes.

Q. And, again, this is on the basis of the symptomatic problem which has been contributed to but not caused by the industrial injury in question?

A. Correct.

\* \* \* \* \* \*

Q. [By Mr. Moore, carrier's attorney] Doctor, is the five percent permanent impairment rating, which I think you said you would agree with Dr. Zoltan's statement in his report, one which you would attribute to the degenerative disease or specifically to that one traumatic episode of October of 1982?

A. [Dr. Gelsey] Okay, when we do a disability, the criteria that we use are the skeletal abnormalities, restriction of motion, diminished strength which, to a degree, can be measured or evaluated objectively, and then there is the subjective aspect of pain, which I think everyone has trouble with.

The disability guides are what I determine my percentage disability on, and then depending on my personal feelings, I may adjust it up or down.

Q. All right.

A. *As I didn't do it with her, I can't tell you that five is what I would come up with.*

Q. Okay.

A. *I would just assume that it would be pretty close.* (Emphasis added)

\* \* \* \* \* \*

Q: [By Mr. Wilmer] In regards to attributing a specific percentage to the injury, Doctor, is it your opinion that the injury in question, as a medical probability, has contributed to the extent of this disability at the present time?

A: Yes, there is no question there because I obtained that by the history. I have to assume that the information I am getting is not tainted.

THE COURT:

Q: Okay. Now, Doctor, you may feel we are beating a dead horse here, but I want to clarify just one more point. Is it your opinion that this 5% impairment is at least in some part attributable to this October 21, '82 industrial episode?

A: (THE WITNESS) Yes.

The administrative law judge (ALJ) issued an award for an unscheduled permanent partial disability stating:

6. Applicant's condition became medically stationary requiring no further active medical treatment on January 9, 1984. Furthermore, the evidence establishes and it is so found that applicant sustained a permanent impairment as a result of the subject industrial episode.

7. Defendants point out some discrepencies between various medical records and applicant's testimony at hearing concerning prior back problems and/or treatment. While said discrepencies are suggestive of a credibility question it is the finding of the undersigned that they are not sufficient to cast doubt upon the applicant's veracity in this case. Furthermore, after reviewing the Commission's file and considering all of the testimony adduced at hearing, and after having observed the applicant's demeanor while testifying under oath, she is found to be a credible witness.

The ALJ "accepted the opinion of Dr. Gelsey [a medical expert] that [claimant] has sustained a permanent impairment as a result of the subject industrial episode as being more probably correct." The ALJ did not find the percentage (rate) of impairment. The Carrier sought judicial review, arguing that claimant had failed to prove the existence and extent of the permanent medical impairment caused by the industrial accident based on a precise rating figure. The court of appeals agreed and, in a memorandum decision, set aside the award holding that to prove a permanent partial unscheduled disability a claimant's impairment must be "rated."

We granted the claimant's petition for review because we do not believe that there must be a rating for an unscheduled permanent disability before an award can issue.

## IV. MUST THERE BE A RATING?

Our statute provides:

In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, *the nature and extent of the physical disability*, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury.

A.R.S. § 23–1044(D) (emphasis added).

The court of appeals has previously stated that an actual percentage impairment is not necessary to uphold an award for compensation benefits. *Cassey v. Industrial Comm'n*, 152 Ariz. 280, 282, 731 P.2d 645, 647 (App.1987). We have stated:

The percentage of impairment is relatively unimportant for unscheduled injuries since it is only one of several factors to be considered in arriving at a permanent disability. A.R.S. § 23–1044(D). The amount of compensation is determined by the claimant's reduction in earning capacity. A.R.S. § 23–1044(C). In the scheduled injury area the percentage of impairment is all-important since the legislature has translated the percentage into a fixed rate of permanent disability. A.R.S. § 23–1044(B).

*Smith v. Industrial Comm'n*, 113 Ariz. 304, 307 n. 4, 552 P.2d 1198, 1201 n. 4 (1976). The injury in the instant case is of the unscheduled variety. The reason an unscheduled injury need not be "rated" so long as it results in some disability is that there is often little relationship between the injury and the resulting disability. A small injury can result in total disability and a large injury can result in a minimum of disability or loss of earning capacity.

The medical testimony as a whole may aid the Commission in determining the "nature and extent of the physical disability" in its loss of earning capacity determination as set forth in A.R.S. § 23–1044(D). However, the inability to give a precise figure for rating is not determinative of the fact that there is some industrial impairment of the claimant's physical condition. If an impairment causally related to an industrial accident is found, but it cannot be rated under the AMA Guidelines, the lack of a magic number does not preclude a finding of a permanent disability. *Gomez v. Industrial Comm'n*, 148 Ariz. 565, 569, 716 P.2d 22, 26 (1986). Moreover, where the magic number of a rating is only *a* factor and not necessarily *the* determinative factor in a disability analysis, the re-

**46**

sult should be no different simply because the expert testifies to a causal relationship between the compensable injury and the impairment without stating *per se* the numerical rating.

> In establishing an unscheduled residual impairment, it is not required that a magic percentage figure be set forth.

*Pew v. Industrial Comm'n,* 20 Ariz.App. 113, 115, 510 P.2d 424, 426 (1973). Although we admit that the better practice would be to assign a rating number to the impairment, we find no error in the failure of the ALJ to assign a rating number.

## V. DOES THE EVIDENCE SUPPORT A DISABILITY?

■ In reviewing the sufficiency of the evidence to support the ALJ's findings, we first note that conflicts in medical evidence must be resolved by the trier of fact. *Ortega v. Industrial Comm'n,* 121 Ariz. 554, 557, 592 P.2d 388, 391 (App.1979). Many factors enter into a resolution of conflicting evidence, including whether or not the testimony is speculative, consideration of the diagnostic method used, qualifications in backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred. *See generally Ison v. Western Vegetable Distributors,* 48 Ariz. 104, 112, 59 P.2d 649, 653 (1936); *Cash v. Industrial Comm'n,* 27 Ariz.App. 526, 532, 556 P.2d 827, 833 (1976); *Radlein v. Industrial Comm'n,* 27 Ariz.App. 215, 218, 553 P.2d 248, 251 (1976). Neither the court of appeals nor this court is a trier of fact. An award of the Commission will be affirmed if it can be supported by any reasonable theory of evidence. *Reynolds Metals Co. v. Industrial Comm'n,* 119 Ariz. 566, 568, 582 P.2d 656, 658 (1978). We believe that the evidence was sufficient to support the findings by the ALJ.

## VI. HOLDING

We have reviewed the medical evidence in a light most favorable to sustaining the award by the Commission. *United States Fidelity & Guaranty Co. v. Industrial Comm'n,* 114 Ariz. 472, 476, 561 P.2d 1244, 1248 (App.1977). We find that the evidence

supports the award. The Commission's award is approved. The decision of the court of appeals is vacated.

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN and MOELLER, JJ., concur.