NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

GEORGE D. JAEGER,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF
ARIZONA,
*Respondent*,

BANNER HEALTH SYSTEM,
*Respondent Employer*,

BANNER HEALTH RISK MGMT,
*Respondent Carrier*.

No. 1 CA-IC 14-0032

FILED 1-6-2015

---

Special Action - Industrial Commission
ICA Claim No. 20113-060149
Carrier Claim No. 157149
The Honorable Deborah Nye, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

George D. Jaeger, San Diego, CA
*Petitioner In Propria Persona*

The Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Jardine Baker Hickman & Houston, Phoenix
By Stephen Baker and John E. Drazkowski
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kenton D. Jones joined.

---

**B R O W N**, Judge:

¶1        This is a special action review of an Industrial Commission of Arizona award and decision upon review awarding petitioner George D. Jaeger ("Jaeger") medical, surgical, and hospital benefits, temporary disability benefits, and supportive care, but denying his request for treatment of migraines and post-traumatic stress disorder ("PTSD"). Jaeger contends the ALJ considered improper evidence and failed to consider relevant medical expert testimony. For the following reasons, we affirm.

**BACKGROUND**

¶2        Jaeger worked for the respondent employer Banner Health System ("Banner")[1] as a psychiatric nurse in its behavioral health hospital. On October 14, 2011, a patient struck Jaeger in the face, resulting in a laceration to his left lower lip and damage to his teeth. Jaeger was transported to a hospital where he received sutures to repair the laceration. Jaeger later underwent two reconstructive surgeries conducted by a plastic surgeon and authorized by Banner.

---

[1]        Banner Health System is a self-insured employer. Thus, we refer to the respondent employer and carrier simply as "Banner."

¶3 Banner also authorized six visits with Dr. James Youngjohn, a neuropsychologist whom Jaeger visited twice before he and the doctor determined further treatment was not necessary at that time. Because Banner declined to provide additional psychological treatment when Jaeger expressed his desire for more visits with Dr. Youngjohn, Jaeger used his Employee Assistance Plan ("EAP") to pay for visits with Dr. George Bluth, a psychologist with whom Jaeger had been a patient seven years earlier. Dr. Bluth diagnosed Jaeger with PTSD and Jaeger continued to see Dr. Bluth until his EAP visits were exhausted. Jaeger filed a request to change doctors from Dr. Youngjohn to Dr. Bluth, which the ALJ ultimately granted in October 2012.

¶4 Because the ALJ's decision did not address the duration of Jaeger's psychological treatment with Dr. Bluth, Banner scheduled an Independent Medical Exam ("IME") with Dr. Lauren Dawson to determine how Jaeger was progressing with his psychological care. Also, because Jaeger had been complaining of migraine headaches, Banner scheduled an IME with a neurologist, Dr. Leo Kahn. Jaeger moved to "exclude" the psychological IME with Dr. Dawson, asserting it was directly contrary to Dr. Bluth's therapeutic advice, but Banner cancelled the scheduled IME before the ALJ could rule on the motion. The neurological IME proceeded as scheduled on January 11, 2013, with Dr. Kahn concluding there was no objective evidence of a neurological injury arising out of Jaeger's industrial incident and, "[f]rom a neurological perspective, Mr. Jaeger does not have any ratable permanent impairment."

¶5 On January 29, 2013, Banner issued a Notice of Claim Status terminating Jaeger's psychological and neurological care. In February 2013, after complaining of "post-coital headaches" that had evolved into migraines, Jaeger was referred by his primary care physician to Dr. Fern Arlen, a neurologist, who diagnosed the migraines as "possibly related" to Jaeger's assault. Jaeger then requested a hearing on the grounds he was entitled to neurological treatment for migraines arising out of the assault and to continued psychological treatment for his PTSD.

¶6 Prior to the re-scheduled psychological IME with Dr. Dawson, Jaeger filed a motion for protective order seeking, among other things, to prevent Banner from requiring him to undergo the IME, which would require him to "rehash" the details of the injury at the planned IME. Jaeger asserted that any discussion of his previous trauma would violate his prescribed course of treatment and could aggravate his PTSD symptoms. The ALJ denied Jaeger's motion for a protective order, but

cautioned both Dr. Dawson and counsel for Banner with the "proviso" that they "avoid exploration of the original trauma . . . in any depth."

¶7 Dr. Dawson conducted her IME on April 15, 2013. Her examination consisted of a psychological assessment, a full review of Jaeger's medical records, and an interview with Jaeger. From her examination, Dr. Dawson determined that Jaeger was psychologically stationary as of the date of the IME. She opined nonetheless that Jaeger would benefit from his final scheduled session with Dr. Bluth to facilitate his discharge from treatment. On May 22, Banner issued a Notice of Claim Status closing Jaeger's claim, terminating active medical treatment, and finding no permanent injury. However, Banner authorized one additional visit with Dr. Bluth and two visits with a surgeon to remove Jaeger's inflamed salivary gland. Jaeger requested a hearing, seeking continuing treatment for his "mild PTSD," surgery, and dental repair.

¶8 The ALJ consolidated Jaeger's hearing requests and heard testimony from Jaeger and four doctors—Kahn, Bluth, Arlen, and Dawson—over the course of three months. The ALJ found there was a conflict in the expert medical opinions of Drs. Kahn and Fern regarding Jaeger's neurological care and of Drs. Dawson and Bluth regarding Jaeger's psychological care. The ALJ adopted the opinions of Drs. Kahn and Dawson, and concluded that Jaeger's injuries were medically stationary without permanent impairment as of July 22, 2013. The ALJ awarded Jaeger medical, surgical, and hospital benefits through July 22, 2013 and supportive care consisting of one additional visit with Dr. Bluth, as well as up to three visits with Dr. Berger, an oral surgeon in California, for the salivary gland surgery which Banner had already agreed to provide. The ALJ also ordered Banner to provide pre-authorization for the salivary gland surgery.

¶9 Jaeger filed a request for review, and the ALJ summarily affirmed her award. Jaeger timely appealed.

**DISCUSSION**

¶10 Jaeger first argues that the ALJ should not have considered Dr. Dawson's IME because it was conducted in violation of the "protective order." However, the ALJ expressly denied Jaeger's March 2013 motion for a protective order. The ALJ's cautionary language regarding the scope of Dr. Dawson's inquiry was simply a "proviso" that encouraged Dr. Dawson to "minimize the need for [Jaeger] to recount his original trauma."

¶11        In an Industrial Commission hearing, the ALJ has wide latitude to admit evidence and is not strictly bound by the rules of evidence. *Fremont Indem. Co. v. Indus. Comm'n*, 144 Ariz. 339, 345, 697 P.2d 1089, 1095 (1985).  Jaeger cites no authority supporting his argument that testimony arising out of an IME conducted beyond the scope of a suggested "proviso" is inadmissible.  Moreover, the evidence presented indicates that Dr. Dawson complied with the ALJ's limited directive "to avoid exploration of the original trauma . . . in any depth."  Dr. Dawson testified that, although Banner failed to provide the order to her before the IME, Jaeger voluntarily provided her with the details of the incident after she cautioned him that he did not need to give specific details of his incident.  She wrote in her examination report that "[d]espite warnings that talking about his assault may cause him to relive his trauma and advice that he was not required to discuss it, he spontaneously engaged in this topic and he was able to discuss his experience in this regard with ease and no associated emotional distress."  Thus, we find no abuse of discretion in the ALJ's decision to consider Dr. Dawson's testimony and report.

¶12        Jaeger also argues the ALJ erred in adopting the opinions of Drs. Dawson and Kahn because other experts testified that the migraines he was experiencing may be the result of his industrial accident. Specifically, Jaeger argues that the ALJ failed to consider relevant expert testimony from his treating neurologist Dr. Arlen, which, if considered, would have demonstrated the testimony from Dr. Kahn was "false."[2]

¶13        Conflicts in medical evidence must be resolved by the trier of fact. *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988).  In resolving such conflicts, the ALJ may consider "whether or not the testimony is speculative, consideration of the diagnostic method used, qualifications in backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred." *Id.*  We will affirm the ALJ's resolution of conflicting evidence unless it is wholly unreasonable. *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19, 695 P.2d 261, 268 (1985).

¶14        Acknowledging her duty to resolve conflicting expert medical evidence, the ALJ adopted the opinions of Drs. Kahn and Dawson

---

[2]        In his briefing, Jaeger makes several references to the "expert testimony" of Dr. Sam Chong.  In fact, Jaeger is referring to a printout of an article on post-traumatic headaches authored by Dr. Chong that was included with Jaeger's request for review.  Dr. Chong was not a treating physician of Jaeger and did not testify at any of the hearings.

as "more probably correct." In so doing, the ALJ considered the testimony of all four medical experts, as well as Jaeger's own testimony regarding his neurological and psychological condition. As to Jaeger's neurological care, the ALJ found that Dr. Arlen had not reviewed Jaeger's medical records, but speculated that there was at least a temporal relationship between the onset of Jaeger's headaches and his industrial accident. By contrast, Dr. Kahn conducted a full record review and neurological exam, and reported in January 2013 that there was "no neurological basis to relate [Jaeger's] current reports of headaches to the . . . industrial injury." Dr. Kahn testified that post-coital migraines are not correlated with head trauma, no medical evidence indicated that Jaeger sustained a brain injury from the assault, and Jaeger's condition was medically stationary without impairment.

¶15　　　　As to Jaeger's psychological condition, the ALJ found Jaeger was a patient of Dr. Bluth prior to the industrial incident, that he never conducted a psychological assessment of Jaeger, and that he diagnosed Jaeger with moderate post-traumatic stress syndrome arising out of the assault. Dr. Bluth also testified that while he had only seen Jaeger once since the claim closed in July 2013, he did not think Jaeger was medically stationary as of early 2013 and Jaeger would benefit from five additional visits. The ALJ also found that Dr. Dawson conducted a record review and psychological evaluation of Jaeger in April 2013, and recommended supportive care in the form of one, but not six, additional visit with Dr. Bluth because Jaeger's psychological condition was medically stationary.

¶16　　　　By arguing he presented evidence that "clearly prove[d]" the testimony of Banner's medical experts to be false, Jaeger essentially asks us to reweigh the evidence on appeal, which we will not do. *See Pac. Fruit Express v. Indus. Comm'n*, 153 Ariz. 210, 214, 735 P.2d 820, 824 (1987) ("We do not weigh the evidence, but consider it in the light most favorable for sustaining the award."). Because the ALJ's resolution of the conflict in medical testimony has a reasonable basis in the record, we find no error. *See Perry v. Indus. Comm'n*, 112 Ariz. 397, 398-99, 542 P.2d 1096, 1097-98 (1975).

¶17　　　　In a third, seemingly hybrid argument, Jaeger asserts that Dr. Dawson's alleged violation of the protective order caused him "direct harm" and that the ALJ should have awarded him "due compensation," presumably in the form of additional supportive care. From what we can understand, this argument is largely a restatement of Jaeger's first argument, in which he contested the admissibility of evidence arising out of his psychological IME. Jaeger also suggests that Dr. Dawson's IME caused his migraines and PTSD symptoms to worsen, and that Banner

intended for the IME to cause such harm by failing to provide the court order that cautioned Dr. Dawson not to delve too deeply into Jaeger's incident. However, Jaeger presents no evidence to support his argument, and the record does not reflect, that the IME was conducted with the intent to harass or cause him additional harm.

**¶18**        In support of his argument that the ALJ erred in failing to award "due compensation," Jaeger quotes from Dr. Bluth's hearing testimony, in which he opined "I think [the IME] destabilized [Jaeger] and brought an increase in the symptoms." To the extent that Jaeger argues that the ALJ should have adopted Dr. Bluth's expert testimony, this is a reiteration of his second argument—that the ALJ should have given more weight to Dr. Bluth's and Dr. Arlen's testimony regarding his need for continuing supportive care. However, Drs. Kahn and Dawson opined that Jaeger's neurological and psychological conditions were medically stationary and the ALJ adopted those opinions, finding that Jaeger was medically stationary as of July 22, 2013 and awarding him benefits through that date. The ALJ's resolution of the conflicting medical opinion testimony has a reasonable basis in the record and we will not reweigh the evidence on appeal. *See Pac. Fruit Express*, 153 Ariz. at 214, 735 P.2d at 824.

## CONCLUSION

**¶19**        For the foregoing reasons, we affirm the award and decision upon review.



Ruth A. Willingham · Clerk of the Court
FILED: ama

7