NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SYLVESTER C. TATMAN, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

PAVESTONE, *Respondent Employer,*

LIBERTY FIRE INSURANCE COMPANY, *Respondent Carrier.*

No. 1 CA-IC 15-0043
FILED 6-14-2016

Special Action - Industrial Commission
ICA Claim No. 20132-600041
Carrier Claim No. WC608-A76784

Michael A. Mosesso, Administrative Law Judge
Suzanne S. Marwil, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Sylvester C. Tatman, Phoenix
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Lundmark, Barberich, LaMont & Slavin, P.C., Phoenix
By Lisa M. LaMont, Danielle S. Vukonich
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

---

**W I N T H R O P,** Presiding Judge:

**¶1**　　　This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding the claim of the petitioner employee, Sylvester C. Tatman ("Petitioner"), not compensable because Petitioner failed to establish by a reasonable preponderance of the credible evidence that he sustained a compensable industrial injury or that he forthwith reported any such injury. The administrative law judge ("ALJ") resolved the issues in favor of the respondent employer, Pavestone, and the respondent carrier, Liberty Fire Insurance Company ("Liberty") (collectively, "Respondents"). Because the ALJ's determinations are reasonably supported by substantial evidence, we affirm the award and decision upon review.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**　　　In 2013, Petitioner worked as a forklift driver for Pavestone. On July 9, 2013, Petitioner was fired due to safety violations.[2] In August 2013, Petitioner worked as a temporary laborer. On August 31, 2013, Petitioner went to the Veterans Administration ("VA") medical center, complaining of right shoulder and right hand pain over the previous couple of weeks, but reporting his hand had undergone "no trauma."

---

[1]　　We consider the facts and inferences therefrom in the light most favorable to sustaining the award. *See Malinski v. Indus. Comm'n*, 103 Ariz. 213, 216, 439 P.2d 485, 488 (1968).

[2]　　After Pavestone terminated his employment, Petitioner filed for unemployment benefits, but was denied benefits.

¶3        On September 13, 2013, Petitioner filed a claim for workers' compensation benefits, alleging he had sustained cuts and a bruise to his right hand and an injury to his right shoulder as a result of his work activities on April 17, 2013.[3]   Pavestone's payroll and e-mail records indicated Petitioner was on vacation on April 17, 2013, and on October 4, 2013, Liberty issued a Notice of Claim Status denying the claim for benefits.

¶4        On December 2, 2013, Petitioner requested a hearing protesting the October 4, 2013 Notice of Claim Status.  Respondents raised the affirmative defense of failure to forthwith report the injury.  *See* Ariz. Rev. Stat. ("A.R.S.") § 23-908(E) (Supp. 2015).

¶5        To determine the compensability of Petitioner's claim, the ALJ held formal hearings on May 29 and December 1, 2014, and February 2, 2015.[4]  At the hearings, the ALJ heard testimony from Petitioner, six of Petitioner's former co-workers, and Paul M. Guidera, M.D.

¶6        Petitioner testified that, on April 17, 2013, he sustained a right hand injury when rollers pulled his hand into a "tumbler" machine, while several of his co-workers witnessed the incident.  Petitioner claimed he immediately reported the injury to his supervisor, went to the first aid station in the break room, and applied ice to his hand.  He subsequently went to lunch, and continued to work after lunch.  According to Petitioner, he asked his supervisor to fill out a report of the injury, but his supervisor refused to do so.  Petitioner continued to work for Pavestone until he was fired for safety violations in July 2013.

¶7        Several of Petitioner's former co-workers—including Freddy Salazar; Gustavo Deloa; Travis Mask; Rago Rodriguez, Petitioner's former supervisor; and James Steven, the plant manager—denied witnessing or

---

[3]        Petitioner later asserted the shoulder injury was a separate injury that occurred on March 20, 2013, and he had filed a separate claim for that injury.  At the December 1, 2014 hearing on Petitioner's claim, Petitioner confirmed with the ALJ that "all we're doing on this [claim for benefits] is the [compensability of the] hand injury from April 17, 2013," and not the "separate incident" involving Petitioner's right shoulder that allegedly occurred on March 20, 2013.

[4]        Suzanne Marwil was the presiding ALJ at the May 29, 2014 hearing. She was replaced by Michael Mosesso, who presided over the remainder of the hearings and issued the findings and award and decision upon review at issue here.  We refer to them collectively as "the ALJ."

having any knowledge of Petitioner's April 17, 2013 injury, at least until after Petitioner filed his claim for benefits. Rodriguez denied Petitioner ever approached him about a hand injury or filling out an injury report. Only one former co-worker, Rene Reyes Rivera, testified he heard about Petitioner's injury the day it happened, and stated he witnessed Petitioner's swollen hand a couple of days later. Rivera also acknowledged his job at Pavestone had been terminated for safety violations in October 2013.

¶8        Dr. Guidera, a hand specialist who performed an independent medical examination ("IME") of Petitioner, testified he reviewed Petitioner's medical records and evaluated Petitioner on May 13, 2014. Dr. Guidera was unable to examine Petitioner's right hand because, when he tried to do so, Petitioner became "very hostile" and began "yelling" at the doctor. The doctor nonetheless opined that, although Petitioner's hand probably did need some medical care, nothing on Petitioner's x-rays supported finding the type of injury Petitioner claimed, and it was "unlikely" Petitioner could have worked for several months without seeking medical treatment if the type and severity of the injury claimed by Petitioner actually occurred. Dr. Guidera concluded the medical record as reported by Petitioner "really doesn't support an injury occurred."

¶9        On April 24, 2015, the ALJ issued his award, finding Petitioner failed to establish by a reasonable preponderance of the credible evidence that he sustained a compensable industrial injury on April 17, 2013, or that he forthwith reported any such injury. The ALJ noted no right shoulder claim with a March 20, 2013 date had been filed, and therefore the proceedings were only for the hand injury of April 17, 2013. Further, the ALJ found the evidence was overwhelming and contradictory to Petitioner's contention that he was working on April 17, 2013, and had sustained and reported an injury on that date, and the ALJ noted he could reject a claimant's testimony that appears to lack credibility. With respect to medical causation, the ALJ noted Dr. Guidera opined he could not match up Petitioner's ability to work subsequent to the injury with the description of the severity of the purported accident.

¶10       Petitioner requested review of the ALJ's award, and on June 25, 2015, the ALJ issued his decision upon review summarily affirming the award. Petitioner filed a timely petition for special action, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2) (2016) and 23-951(A) (2012), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

**ANALYSIS**

*I.      Standard of Review*

**¶11**          In general, Petitioner bears the burden of establishing the material elements of his claim, including that his condition is causally related to a work-related injury. *See Estate of Bedwell v. Indus. Comm'n*, 104 Ariz. 443, 444, 454 P.2d 985, 986 (1969); *T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 45-46, ¶ 12, 6 P.3d 745, 749-50 (App. 2000). "To be eligible for workers' compensation benefits, an employee who is injured on the job must 'forthwith report the accident and the injury resulting therefrom to [his] employer.'" *Douglas Auto & Equip. v. Indus. Comm'n*, 202 Ariz. 345, 347, ¶ 5, 45 P.3d 342, 344 (2002) (quoting former A.R.S. § 23-908(D)). The burden of proving an excuse for failing to timely report a job-related injury rests with the injured employee, who must do so by a preponderance of the evidence. *Id.* at 347 n.1, ¶ 7, 45 P.3d at 344 n.1.

**¶12**          If it is not readily apparent to a layman whether a claimant has residual disability resulting from an industrial accident, the need for further treatment is essentially a medical question to be answered by expert medical evidence. *See Yates v. Indus. Comm'n*, 116 Ariz. 125, 127, 568 P.2d 432, 434 (App. 1977); *Spears v. Indus. Comm'n*, 20 Ariz. App. 406, 407, 513 P.2d 695, 696 (1973). The ALJ resolves conflicts in the medical evidence, draws warranted inferences, and is the sole judge of witnesses' credibility. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988); *Malinski*, 103 Ariz. at 217, 439 P.2d at 489; *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984). An ALJ may reject a claimant's testimony when it is inherently inconsistent and contradictory and when inferences can be drawn from other evidence that cast doubt upon its credibility. *Wimmer v. Indus. Comm'n*, 15 Ariz. App. 543, 544, 489 P.2d 1245, 1246 (1971).

**¶13**          We deferentially review the ALJ's factual findings, but independently review any legal conclusions. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We will uphold the ALJ's findings if reasonably supported by substantial evidence. *See generally Carousel Snack Bar*, 156 Ariz. at 46, 749 P.2d at 1367; *Malinski*, 103 Ariz. at 216-17, 439 P.2d at 488-89.

*II.      The Merits*

**¶14**          Petitioner's opening brief generally fails to identify or discuss specific legal grounds or arguments for vacating the ALJ's award. Moreover, to the extent we are able to discern issues within his brief, most

of them are not developed and some appear to be irrelevant to the ALJ's determination that Petitioner failed to establish by a reasonable preponderance of the credible evidence that he sustained a compensable industrial injury on April 17, 2013, or that he forthwith reported any such injury.

¶15      An appellant's argument must contain citations to relevant legal authorities, supporting reasons for each contention, and appropriate references to portions of the record on which he relies.  *See* ARCAP 13(a)(7)(A)-(B).  The failure to comply with ARCAP 13 may constitute waiver of the arguments made.  *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62, 211 P.3d 1272, 1289 (App. 2009); *see also Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived." (citations omitted)).  Petitioner's brief fails to comply with ARCAP 13(a)(7).  Respondents' answering brief also lacks relevant citations to the transcripts and other portions of the record, and is thus also non-compliant.  *See* ARCAP 13(b)(1).  Accordingly, we decline to apply waiver on the basis of Petitioner's non-compliance with ARCAP 13.

¶16      Even bypassing the non-compliance issue, however, we find no reason to overturn the ALJ's award, which is reasonably supported by substantial evidence.  Although Petitioner's arguments suggest a vast conspiracy existed—in which a now-former claims specialist at the Industrial Commission allegedly misled him as to how to properly complete the Worker's Report of Injury form, counsel for Respondents allegedly used information about his child support situation to prevent him from obtaining an attorney, the VA medical center's employees allegedly altered and/or mismanaged records, Dr. Guidera allegedly misunderstood and/or testified untruthfully against him, the State prevented him from presenting a witness from the Equal Employment Opportunity Commission ("EEOC") to testify "that no company in the State of Arizona has to give an accident report that occur (sic) on their property," the ALJ interrupted his cross-examination of various witnesses to ask questions, each of the three court reporters utilized at the hearings allegedly incorrectly transcribed the proceedings and/or caused portions of his cross-examinations of witnesses to be missing from the record, and Pavestone's management and employees allegedly conspired to testify untruthfully against him—the record does not support Petitioner's suggestion of a conspiracy.

¶17      Petitioner discusses his right shoulder injury, and suggests he may have been misled as to how to report that injury, but as the ALJ

indicated and Petitioner affirmatively confirmed, only the April 17, 2013 hand injury was to be adjudicated in this matter. In discussing that issue, the ALJ informed Petitioner, "In order to have a hearing [pertaining to the right shoulder], that claim would have to be denied, and then you would have to follow the same process you did here and request a hearing. I can't hear about a claim that the carrier has not yet denied." Petitioner agreed it made "sense" that the alleged shoulder injury would be a separate claim and would need separate proceedings. Whether Petitioner may have a separate claim with respect to his right shoulder is not properly a part of this appeal.

¶18        Petitioner also mentions his child support lien and suggests he was unable to retain counsel because Respondents' attorney "put [his lien] out so that every workman's comp attorney's (sic) in the state of Arizona would see this and make it hard for [him] to retain an attorney." Nothing in the record supports his accusation, and although Petitioner filed a Release of Child Support Lien letter sent to him by the Arizona Department of Economic Security on February 25, 2015, the lien was not submitted into evidence by Respondents at the hearings, and no testimony was received regarding any child support lien. Furthermore, Petitioner declined opportunities to seek out counsel, despite the ALJ's offers to postpone the proceedings to allow him to do so.

¶19        Petitioner states the VA is "horrible and dishonest," and disputes the accuracy and completeness of the VA records. However, Petitioner was provided opportunities to submit additional records and/or a witness from the VA, but declined to do so. Petitioner was also afforded the opportunity to subpoena any doctor he wanted to testify on his behalf, but chose to rely only on the testimony of Dr. Guidera, who conducted the IME. Although Petitioner now challenges Dr. Guidera's testimony, he had the opportunity to fully cross-examine the doctor at the February 2, 2015 hearing, and nothing in the doctor's testimony indicates bias or prejudice against Petitioner. Moreover, if Petitioner had an issue with Dr. Guidera's IME report, Petitioner could have addressed any alleged error through cross-examination, submitted any medical reports contradicting Dr. Guidera's testimony, or presented other expert medical testimony. Petitioner did not do so, and his reliance on the testimony of his former co-worker, Rivera, is insufficient to create a conflict of medical evidence in this case. *See Yates*, 116 Ariz. at 127, 568 P.2d at 434; *Spears*, 20 Ariz. App. at 407, 513 P.2d at 696. Accordingly, the ALJ did not err in finding there was no conflict of medical opinion.

¶20     Petitioner subpoenaed an EEOC investigator, Anick Flores, to testify, but claims the State would not allow her to testify. The ALJ explained to Petitioner at the outset of the hearings that the EEOC had declined to allow Flores to testify, and the State could not compel an EEOC investigator to testify regarding her investigative findings without approval from the EEOC's legal counsel. *See generally In re Elko Cty. Grand Jury*, 109 F.3d 554, 556 (9th Cir. 1997); *Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir. 1986); 42 U.S.C. § 2000e-5(b); 29 C.F.R. §§ 1601.22, 1610.32. Moreover, if Petitioner wanted to address the fact that Pavestone did not give him an accident report when he allegedly requested one, he could have cross-examined one of the Pavestone lay witnesses regarding this issue. Instead, after Petitioner's former supervisor, Rodriguez, testified he had not received report of an injury from Petitioner and had never refused to fill out an accident report, Petitioner declined to cross-examine Rodriguez on the subject of the accident report. Petitioner also did not cross-examine Steven, the plant manager, regarding the accident report after Steven testified regarding the company protocol for producing such a report.

¶21     Petitioner also complains the ALJ interrupted his cross-examination of various witnesses to ask questions. "A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition." *United States v. Nash*, 115 F.3d 1431, 1440 (9th Cir. 1997) (citation omitted). The questioning by the ALJ in this case was not improper.

¶22     Petitioner argues the three certified court reporters involved throughout the entirety of these proceedings each incorrectly transcribed the proceedings and/or caused portions of his cross-examinations of witnesses to be missing. Even assuming Petitioner did not waive this issue by failing to raise it in his request for review, nothing in the record supports his contention. Nothing indicates the transcripts of the proceedings contain less than the full testimony of each witness, and on this record, we find no error.

¶23     Petitioner also appears to argue the ALJ incorrectly rejected his testimony and the supporting testimony of Rivera, but the ALJ was not required to believe Petitioner or his witness in the face of overwhelming testimonial and documentary evidence to the contrary. *See Wimmer*, 15 Ariz. App. at 544, 489 P.2d at 1246. We find no abuse of the ALJ's discretion in resolving any conflict in the evidence in favor of Respondents. *See Carousel Snack Bar*, 156 Ariz. at 46, 749 P.2d at 1367; *Malinski*, 103 Ariz. at

217, 439 P.2d at 489; *Holding*, 139 Ariz. at 551, 679 P.2d at 574. The ALJ's findings and award are reasonably supported by substantial evidence.

## CONCLUSION

**¶24** For the foregoing reasons, we affirm the ALJ's award and decision upon review finding Petitioner's claim not compensable because Petitioner failed to establish by a reasonable preponderance of the credible evidence that he sustained a compensable industrial injury on April 17, 2013, or that he forthwith reported any such injury. Respondents are awarded their taxable costs on appeal, subject to their compliance with Rule 21, ARCAP.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA