NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

DALLAS K. TOOLEY,
*Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent,*

FRY'S FOOD STORES OF ARIZONA, INC.,
*Respondent Employer,*

FRY'S FOODS STORES OF ARIZONA, INC., c/o SEDGWICK,
*Respondent Carrier.*

No. 1 CA-IC 18-0039
FILED 4-4-2019

Special Action – Industrial Commission
ICA Claim No. 20171-300389
Carrier Claim No. 30177787301-0001
Michelle Bodi, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Dallas K. Tooley, Mesa
*Petitioner Employee*

The Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark Barberich LaMont & Slavin, P.C., Phoenix
By Lisa M. LaMont, Danielle Vukonich
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Chief Judge Samuel A. Thumma joined.

---

**W I N T H R O P**, Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review, finding the claim of petitioner employee, Dallas K. Tooley ("Petitioner"), not compensable. The administrative law judge ("ALJ") resolved the issues in favor of the self-insured respondent employer, Fry's Food Stores of Arizona, Inc. ("Fry's"). We affirm the award and decision upon review because the ALJ's determinations are reasonably supported by substantial evidence in the record.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Petitioner worked for Fry's as a floral manager. In that position, she was responsible for building seasonal floral displays, which required her to regularly lift and move pallets of various floral products.

**¶3** On February 5, 2017, Petitioner began constructing the store's outdoor Valentine's Day display. A floral manager from another store helped Petitioner, and the pair moved pallets of product, weighing between thirty to fifty pounds each, from inside the store to the far side of the store parking lot. They transported sixteen pallets at a time by pulling a pallet jack because they did not have access to a forklift. Once all the materials were in the parking lot, they lifted each pallet up into a semi-trailer.

**¶4** Petitioner continued to build the outdoor display over the next few days. On February 12, 2017, she fell on her tailbone while at work.

2

Although in pain, she did not immediately seek medical attention and continued to work through Valentine's Day. After two weeks of continued pain, Petitioner went to the doctor on March 7, 2017, and was diagnosed with a fractured tailbone. She did not tell her manager about the injury.

¶5            On April 6, 2017, Petitioner began to build the store's Easter display. She remained in pain through April, but she dismissed the ongoing pain as a symptom of her tailbone injury. The following week, her right leg became numb and Petitioner thought that she was having medical issues unrelated to her tailbone injury. On April 12, 2017, she sought treatment from Dr. Tammy Turney. On her initial intake paperwork, Petitioner stated she was seeing Dr. Turney for weight loss treatment. She then mentioned her fractured tailbone to Dr. Turney during the examination. Dr. Turney gave Petitioner a B12 vitamin shot and a doctor's note stating she could only perform "light duty work."

¶6            Petitioner spoke to her manager on April 13, 2017, to explain all the issues she was experiencing and presented the doctor's note. Her manager insisted the injuries were not work-related, and they argued over her ability to file a workers' compensation claim. Feeling pressured by her manager, Petitioner ultimately filed a "request for leave of absence" form that day, and she checked the box indicating her injury was not work-related.

¶7            On April 21, 2017, Petitioner saw Dr. Judah Pifer, an orthopedic specialist. Petitioner wrote on her initial paperwork that she sought treatment for a fractured tailbone that occurred when she fell off a chair at home in November 2016. Petitioner received an MRI scan and Dr. Pifer informed her that she had a herniated disc. Dr. James Clark then examined Petitioner on April 24, 2017. He found "an extrusion [of disc material] of approximately 7 mm" into Petitioner's L5-S1 disc space with "impingement upon the right S1 nerve root."

¶8            On April 28, 2017, Petitioner filed a "Worker's and Physician's Report of Injury" with the ICA. She recorded her date of injury as both February 12 and February 15, but described the injury as originating in her back "from excessive and heavy lifting over time." After the ICA initially investigated the two different injury dates reported by Petitioner, Fry's issued a Notice of Claim Status on June 15, 2017, denying Petitioner's claim.

Petitioner then requested a hearing to review the decision, which was scheduled for August 30, 2017; January 11, 2018; and January 30, 2018.[1]

¶9        After Petitioner filed her ICA claim, but before the hearings, Dr. Dan Lieberman, a neurosurgeon, reviewed Petitioner's MRI results and conducted a phone consultation with her.  Dr. Lieberman determined Petitioner required surgery to remove excess disc material protruding into her spinal canal caused by her herniated disc.  Dr. Lieberman conducted the microdiscectomy procedure on June 16, 2017.

¶10        Thereafter, Fry's scheduled a medical examination of Petitioner with Dr. Terry McLean, an orthopedic spine surgeon.  In her exam with Dr. McLean, Petitioner mentioned her fall at home in November 2016, but she did not mention the fall at work in February 2017.  Dr. McLean determined that Petitioner had previously suffered from a herniated disc, but there was "no objective medical documentation" indicating any injury causing the herniated disc occurred while Petitioner was at work.

¶11        At the August 2017 and January 2018 hearings, Fry's argued Petitioner failed to timely report her injuries pursuant to Arizona Revised Statute ("A.R.S.") section 23-908(E).  Fry's called seven store employees to testify.  One witness stated Petitioner told him she injured her back at home and then re-injured herself at work.  The other witnesses stated Petitioner never mentioned any back injury taking place while at work.

¶12        Dr. Lieberman provided expert testimony in support of Petitioner's claim.  Dr. Lieberman testified that he performed surgery on Petitioner in June 2017 to remove seven millimeters of herniated disc material.  He explained that a herniated disc is caused by a tearing of the fibrocartilage tissue surrounding the disc (the annulus), which allows the disc material to move out of place and impinge one or more spinal nerves.  Dr. Lieberman also explained that an annular tear feels like "a knife in the back."  He ultimately opined that the repeated lifting of the heavy pallets at Petitioner's job caused an annular tear in Petitioner's back sometime in February 2017.  The continued heavy lifting then caused Petitioner's disc to protrude over time, resulting in nerve impingement and the need for surgical treatment.

¶13        Dr. McLean provided expert testimony on behalf of Fry's.  He opined that if Petitioner had suffered an annular tear at work, she would

---

[1]        Fry's also requested a hearing to contest the ICA's approval of Petitioner's request to change doctors.

have had immediate symptoms. He explained that general "soreness" was not consistent with symptoms of a traumatic tear of the annulus. After examining Petitioner and reviewing her past medical records, Dr. McLean found no date or report of injury that described the type of pain consistent with such a traumatic event, and therefore he did not believe Petitioner suffered an injury at work in February 2017 or at any point after that. Although he agreed that Petitioner suffered a herniation in April 2017, Dr. McLean did not believe the herniation was due to Petitioner's work activities. Instead, he stated that Petitioner likely had pre-existing degeneration in her L5-S1 disc, and the herniation in April was caused by the natural progression of an already degenerative disc—not a trauma-caused annulus tear resulting from lifting heavy boxes.

¶14        The ALJ ultimately found Petitioner failed to "forthwith report" her injury, as required by A.R.S. § 23-908(E), and adopted the opinion of Dr. McLean as to the source of Petitioner's injury; accordingly, her claim was non-compensable. The ALJ explained that even though Petitioner began having symptoms of pain as early as February, she did not report any injuries to her superiors until April. The ALJ also concluded Petitioner should not be excused for her failure to timely report her injuries because Fry's was prejudiced by Petitioner's delay. The ALJ explained, "[i]f Applicant had reported her injuries in February, Fry's could have referred her for prompt medical attention to assess her condition and prevent further aggravation. Fry's also could have investigated Applicant's claim and provided appropriate accommodation, such as light duty work."

¶15        Petitioner timely requested a review of the decision, and the ALJ issued a decision upon review affirming the findings of a non-compensable claim. The ALJ stated that Petitioner's testimony regarding what she told each physician and her manager about her injuries was inconsistent, and the ALJ therefore resolved any inferences drawn from the testimony against her. In addition, the ALJ determined Dr. McLean's medical opinion was more credible than Dr. Lieberman's.

¶16        Petitioner then timely filed this special action on June 5, 2018. We have jurisdiction in this matter pursuant to A.R.S. §§ 12-120.21(A)(2) and 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**ANALYSIS**

   I.     *Standard of Review*

¶17        When reviewing findings and awards of the ICA, we consider the evidence in the light most favorable to upholding the award. *Lovitch v.*

*Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002) (internal citation omitted). We will uphold the ALJ's findings if reasonably supported by substantial evidence. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 216 (1968).

**¶18** In general, a petitioner bears the burden of establishing the material elements of her claim. *See T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 45-46, ¶ 12 (App. 2000). When a claimant attempts to establish an industrial injury that is not clearly apparent to a layman, expert medical testimony is required. *W. Bonded Prods. v. Indus. Comm'n*, 132 Ariz. 526, 527 (App. 1982). The ALJ resolves all conflicts in the medical evidence, draws warranted inferences, and is the sole judge of witness credibility. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Malinski*, 103 Ariz. at 217. An ALJ may reject testimony that is inherently inconsistent and contradictory, or when inferences can be drawn from other evidence that cast doubt upon the credibility of such testimony. *Wimmer v. Indus. Comm'n*, 15 Ariz. App. 543, 544 (1971).

## II. Merits of the Claim

**¶19** Petitioner asserts the ALJ relied on an incorrect date of injury when determining that she failed to timely report her work-related injury. In addition, Petitioner contends the ALJ erred by adopting Dr. McLean's medical opinion. We review each argument below.

### A. Timeline of the Injury

**¶20** Petitioner maintains the ALJ incorrectly analyzed her ICA claim using the dates in relation to her fractured tailbone as opposed to the dates in relation to the disc injury and resulting herniation. She asserts that she is only seeking compensation for her herniated disc injury and not her fractured tailbone injury, and the ALJ therefore should not have considered any dates of injury relating to her tailbone. She further asserts that the disc cartilage tear occurred sometime in February, resulting in the herniated disc in April.

**¶21** The ALJ rejected Petitioner's testimony regarding the origin of her injury, which the ALJ found not credible in light of the other evidence in the record. Because Petitioner's version of the industrial event was not supported by the other employees' testimony, and because Petitioner's conflicting statements in her medical records created confusion concerning the origin of both her fractured tailbone and herniated disc, the ALJ was not required to accept Petitioner's testimony. *See Desert Insulations, Inc. v. Indus. Comm'n*, 134 Ariz. 148, 151 (1982) (stating that medical testimony can be so weakened by proof of an inaccurate factual background that it cannot be

said to constitute substantial evidence to support an award); *Wimmer*, 15 Ariz. App. at 544 (stating an ALJ may reject a claimant's testimony when inferences can be drawn from other evidence that casts doubt on its credibility). The ALJ's findings are supported by the record, and we therefore find no error.

### B. Expert Opinion

**¶22** Petitioner also asserts that the ALJ should have adopted the opinion of Dr. Lieberman because Dr. McLean agreed that she suffered a herniated disc in April 2017. Further, she asserts Dr. McLean did not have enough information to opine on the cause of her injury.

**¶23** After hearing the doctors' testimony and reviewing the relevant evidence, the ALJ determined that the opinion of Dr. McLean regarding the causation of the herniated disc was more probably correct. This determination was within her discretion and supported by the medical evidence because Petitioner gave conflicting statements of causation for her injuries at each of her medical examinations. *Carousel Snack Bar*, 156 Ariz. at 46 ("[C]onflicts in medical evidence must be resolved by the trier of fact."). Additionally, the record shows Dr. McLean had access to Petitioner's medical records before conducting his evaluation of her symptoms and injuries at the scheduled medical examination. Therefore, the ALJ did not err in adopting the opinion of Dr. McLean over that offered by Dr. Lieberman.

### CONCLUSION

**¶24** For the foregoing reasons, we affirm the ALJ's award and decision upon review finding Petitioner's claim non-compensable.

